MARY GWENDOLYN GREGGO,
Plaintiff,

vs.

JAMES JOHN GREGGO,
Defendant.

*New Castle, September 25, 1963.*

*Bruce M. Stargatt,* of Morford, Young & Conaway, Wilmington, for plaintiff.

*Victor F. Battaglia,* of Theisen & Lank, Wilmington, for defendant.

SHORT, Vice Chancellor: This is an action for separate maintenance. The complaint alleges that plaintiff and defendant were married on May 27, 1946; that defendant deserted plaintiff on February 15, 1963; that on March 6, 1963 plaintiff caused to be instituted in the Family Court in New Castle County, Delaware, an action for nonsupport pursuant to the provisions of 13 *Del.C.* § 502; that on March 15, 1963 the Family Court entered a temporary order requiring defendant to pay plaintiff $25 per week for her support; that on May 10, 1963 the Family Court entered an order in the following language: "That Court is satisfied that this prosecuting witness does have earning capacity, is employable, and as Court understands criminal law in Delaware is not entitled to be supported by her husband at this time. The request for support is therefore denied;" that defendant has not contributed to plaintiff's support since the date of

their separation; and that plaintiff is destitute and has no adequate remedy at law. This action was filed on the same day upon which the Family Court entered its order denying support to the plaintiff.

In his answer defendant denies that he deserted the plaintiff and alleges that their separation was by mutual consent. By way of affirmative defense the answer asserts that plaintiff is barred from any recovery (a) by her own misconduct, (b) by her election to pursue the remedy provided by law in the Family Court, (c) because the complaint fails to state a cause of action, and (d) because plaintiff has an adequate remedy at law. Defendant now relies, also, on the doctrine of res judicata. The question posed by the defense that plaintiff had made an election of remedies in pursuing that provided by law in the Family Court was argued prior to trial but not decided. This is the decision after final hearing.

I will first consider defendant's affirmative defense that plaintiff is barred from proceeding in this court by the principle of election of remedies. In *Hannigan v. Italo Petroleum Corp.*, 7 *W.W.Harr.* 180, 181 *A.* 4, Judge Harrington, speaking for the Superior Court, had this to say concerning this doctrine: "There are cases where a particular remedy is barred by an election of the plaintiff because of some prior action or proceeding taken by him, but a defendant who relies on such a prior election must clearly bring himself within the rule. Broadly speaking, an election of remedies is the voluntary choice by a party to an action of one or more co-existing, but necessarily inconsistent and repugnant remedial rights growing out of the same known facts; and, as we have already said, when he has two or more concurrent and consistent remedies, he may prosecute one or all of them to satisfaction." The court further observed that the doctrine of election is generally regarded as an application of, at least, some of the general principles of the law of estoppel.

Section 502, *Title* 13 *Del.C.*, provides: "(a) Any husband who, without just cause, deserts or wilfully neglects or refuses to provide for the support and maintenance of his wife in destitute or necessitous circumstances * * * shall be fined not more than $500, or imprisoned at hard labor at such prison of this State as determined by the

court, for not more than one year, or both. (b) In construing the term 'destitute or necessitous circumstances' as used in this chapter, the court shall consider the health, the relative economic condition, the financial circumstance, the income including the wages, and the earning capacity of the husband and of the wife * * *."

Subsequent sections of *Title* 13 provide that nonsupport proceedings may be instituted upon complaint of the wife and that on the entry of a plea of guilty, or after conviction, the court, instead of imposing the penalty provided by § 502, or in addition thereto, may make an order releasing the defendant on probation and requiring him to pay a certain sum periodically into the court for the support of his wife.

These sections, including § 502, are with some modifications a part of what is designated as the "Uniform Desertion and Non-support Act." The history of the Delaware statutes pertaining to desertion and nonsupport was considered by Judge Rodney in In re *Alexander*, 3 *Terry* 461, 36 *A.2d* 361. It was there held that statutes of this nature are criminal or quasi criminal in character. To the same effect see *DuPont v. DuPont*, 32 *Del.Ch.* 413, 85 *A.2d* 724. In *Donaghy v. State*, 6 *Boyce* 467, 100 *A.* 696, the Supreme Court in considering what is now § 502, *Title* 13, *Del.C.* said that the purpose of the statute was evident as not only providing a punishment for dereliction of duty but also a means of enforcing the continuing liability to provide support, and that its object was not only to protect the State against the effects of pauperism, but also to actually secure to the wife money for food, raiment and shelter. Thus, it would appear that the jurisdiction of a court in which a prosecution for desertion and nonsupport is instituted would be limited in making an award for support to such an amount as might be required to secure to the wife sufficient funds for "food, raiment and shelter." No case has been cited, nor am I aware of any wherein a court of this State has, in such a prosecution, made an award beyond that required to furnish the wife with the "necessaries of life." I do not so read *State v. Weldin*, 8 *W.W.Harr.* 158, 189 *A.* 586 or *State v. Sharp*, 1 *W.W.Harr.* 148, 111 *A.* 909. Whatever expressions may have been used in those cases with respect to the matters which the court should

consider were in connection with the determination of whether or not the wife was "in destitute or necessitous circumstances." This court, on the contrary, is not confined in arriving at the proper amount of an award by the bare needs of the wife. Items contributing to her comfort and accustomed manner of living are properly considered, limited, of course, by her husband's ability to pay. The difference in relief which this court may afford the wife is therefore obvious.

Plaintiff argues that a proceeding under the nonsupport act and the present suit are not inconsistent and repugnant, and that, therefore, the doctrine of election of remedies is not applicable. Other than to say that the factual situation in *Hannigan v. Italo Petroleum Corp., supra,* is not comparable to the present, defendant has not seen fit to answer this argument. It may have merit. But I am satisfied, in any event, that defendant's contention that plaintiff by proceeding under the criminal statute has thereby precluded herself from seeking relief in this court is without merit.

It has been held in many cases that a judgment in a civil action is not res judicata in a criminal case, or vice versa, there being no mutuality of parties and a different degree of proof, respectively, being required. *Helvering v. Mitchell,* 303 *U.S.* 391, 58 *S.Ct.* 630, 82 *L.Ed.* 917; *Roden & Son v. State,* 30 *Ala.App.* 229, 3 *So.2d* 420; *Watke v. State,* 166 *Wis.* 41, 163 *N.W.* 258; *State v. Wohlfort,* 123 *Kan.* 62, 254 *P.* 317. While the cited and other like cases deal principally with the doctrine of res judicata, the principles applicable to that doctrine and to the election of remedies are of similar nature. Each, in some degree, is an application of the law of estoppel, and both are based on the maxim that a party shall not be twice vexed for one and the same cause. *United States v. Oregon Lumber Co.,* 260 *U.S.* 290, 43 *S.Ct.* 100, 67 *L.Ed.* 261.

It has frequently been held that a prosecution for desertion and nonsupport is not precluded by the fact that alimony for the support of wife and children has been decreed, or denied, in divorce or other proceedings. *Williams v. State,* 207 *Miss.* 816, 43 *So.2d* 389; *Bostic v. State,* 54 *So.2d* 669 (*Miss.*); *Dobbins v. State,* 268 *P.2d* 307 (*Okl.Cr.*); *State v. Wohlfort, supra; State v. Greenberg,* 16 *N.J.* 568, 109 *A.2d* 669.

In *State v. Greenberg, supra,* defendant was indicted under the Uniform Desertion and Nonsupport Act upon his wife's complaint that on December 7, 1950 he deserted her and her child and wilfully neglected and refused to provide for their maintenance and support. A conviction on this charge was affirmed by the *Appellate Division, 30 N.J.Super. 592, 105 A.2d 683.* Defendant then appealed to the Supreme Court of New Jersey. It appeared that on September 17, 1952 the wife had filed a complaint in the Hudson County Juvenile and Domestic Relations Court under the Uniform Reciprocal Enforcement of Support Act, by which she sought an allowance of $40 weekly for the support of herself and child. The domestic relations court, after making findings prescribed by the Act, forwarded the required papers to the appropriate court in New York City where defendant then resided. The New York court entered an order of $15 weekly for the support of the child only, with no allowance for the wife. The New Jersey action followed. Defendant contended that the New York proceedings were a bar to any action, civil or criminal, upon the wife's complaint under the Uniform Desertion and Nonsupport Act; that the adjudication by the New York court was res judicata; that the wife elected the procedure and was bound by the result. The Supreme Court of New Jersey summarily dismissed defendant's contentions in this language: "The Appellate Division correctly disposed of defendant's argument in holding that the wife's proceeding under the reciprocal legislation was of a civil nature and could not operate to bar the State from redressing the criminal offense."

That the converse of the rule so stated is equally true would seem to necessarily follow. Thus, in *Helvering v. Mitchell, supra,* the government sued to collect income tax deficiencies. The revenue act, 26 *U.S.C.A. (I.R.C.* 1939) § 293, provided that if any part of any deficiency is "due to fraud with intent to evade tax" then, in addition to the deficiency, 50 per centum of the total amount thereof should be assessed. Upon a finding that defendant had fraudulently failed to make return of certain sums in his tax returns aggregating $728,709.84, the Commissioner assessed that amount plus 50 per centum thereof on account of the fraud. The additional assessment

was ultimately reversed by the Circuit Court of Appeals. On appeal by the Commissioner from this ruling defendant contended that the additional assessment was barred by the doctrine of res judicata. It appeared that before the deficiency assessment was made defendant had been indicted in a Federal Court on a charge that he "unlawfully, wilfully, knowingly, feloniously, and fraudulently did attempt to defeat and evade an income tax of, to wit, $728,709.84, upon his net income for 1929." Defendant was tried on this indictment and acquitted. He contended "that all the facts and intents requisite to the imposition of the 50 per centum addition to the deficiency were put in issue and determined against the government in the criminal trial, and that hence, under the doctrine of res judicata, the judgment of acquittal bars it from obtaining a second judgment based upon the same facts and intents." Mr. Justice Brandeis, speaking for the Supreme Court of the United States, said: "The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata. The acquittal was 'merely * * * an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.' * * * It did not determine that Mitchell had not willfully attempted to evade the tax. That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled."

In Ex parte *Jackson, 212 Ala.* 496, 103 *So.* 558, a case bearing marked similarity to the present, a wife for whose benefit an order for support had been obtained in a domestic relations court pursuant to a prosecution for desertion and nonsupport filed an action in chancery for alimony. It was contended on behalf of the defendant that the jurisdiction of the domestic relations court was original and exclusive and therefore a bar to recovery in the equity court. The Supreme Court of Alabama in denying this contention said: "The prosecution for 'abandonment and desertion' in the juvenile or domestic relations court for the support of the wife and children and decree for $25 per month is no bar to the proceeding for alimony and attorneys' fees, though they be allowances pendente lite. The statutory jurisdiction conferred on the juvenile or domestic relations court

does not deprive a court of equity of its original jurisdiction in the premises." At a later point in its opinion the Alabama Court also said: "The judgment of the juvenile or domestic relations court was not res judicata in this action."

In *Silva v. Silva*, 297 *Mass.* 217, 7 *N.E.2d* 601, a proceeding by a husband for divorce on the ground of desertion, the Supreme Judicial Court of Massachusetts upheld a ruling by the trial court excluding evidence offered by the wife of convictions of the husband in nonsupport proceedings. The court said: "Here there could have been no mutuality, for nothing decided in criminal proceedings brought against the libellant [husband] could have bound the libellee [wife], who was not a party to them, even if she did make the complaints by which they were initiated."

In *Commonwealth v. Widmeyer*, 149 *Pa. Super.* 91, 26 *A.2d* 125, it was held that a defendant could be simultaneously prosecuted for desertion and nonsupport under a statute the purpose of which was protection and maintenance of wives and children and a statute the purpose of which was the punishment of deserting husbands. The court said that the proceedings under the different acts were not conflicting and might run concurrently.

There is a line of cases in New Jersey which bear upon the propriety of the defense asserted by defendant. In two early cases the Court of Chancery of that state had held that a prosecution by a wife under the so-called disorderly act constituted an election by the wife to pursue the legal remedy and was a bar to a subsequent proceeding by her in equity for maintenance. *Roarke v. Roarke*, 77 *N.J.Eq.* 181, 75 *A.* 761; *Zanzonico v. Zanzonico*, 14 *N.J.Misc.* 674, 186 *A.* 779. However, in *Hiers v. Hiers*, 132 *N.J.Eq.* 610, 29 *A.2d* 615, the Court of Errors and Appeals of New Jersey declined to follow the rule announced by the Court of Chancery in Roarke. The Appellate Court based its decision upon what it construed to be the purpose of the disorderly act, namely, "to prevent deserted wives and children from becoming public charges." The court said that the two proceedings were so different in their nature and in the relief that could be given that the wife was not barred under the doctrine

of the election of remedies from seeking the aid of chancery. While the limited relief which was available to a wife in the domestic relations court undoubtedly formed the principal basis for the Court of Errors and Appeals' decision, the later decision of the Supreme Court of New Jersey in *State v. Greenberg, supra,* indicates that a criminal prosecution under the Uniform Nonsupport Act is not barred by prior civil action in which the wife also seeks support. As already indicated, I can see no reason why the converse of this proposition should not follow.

Defendant relies upon an implication which he draws from the language of the New Jersey Supreme Court in *Lasasso v. Lasasso,* 1 *N.J.* 324, 63 *A.2d* 526 to the effect that the defenses of election of remedies and res judicata are applicable in cases of the type here involved when it can be said that the two courts act in a concurrent sphere. Assuming that defendant's implication is properly drawn, can it be said in this case that the Family Court and this court are acting in a concurrent sphere? I think not. The proceeding before the Family Court is at least quasi criminal in nature. It is tried in accordance with the rules of criminal procedure which invoke the presumption of innocence and impose upon the State the burden of proof beyond a reasonable doubt. *State v. Kempner,* 1 *Storey* 109, 138 *A.2d* 504. Control of the action in Family Court is in the hands of the attorney general. Strictly speaking, the wife is not a party to the proceeding in that court. She herself has no right, nor can she force the state to appeal from an adverse decision. Neither is she, under the statute, entitled to representation by her own counsel. On the contrary, in this court, control of the wife's action is in her own hands and those of counsel of her choice. The presumption of innocence does not apply and proof by a preponderance of the evidence is sufficient. The wife has the right to appeal from a decree here entered. Moreover, the means of enforcement of an order entered by this court are broader than those available in the Family Court. In short, the remedy in the Family Court "is not in major aspects similar to or the equivalent of that given by the Court of Chancery." *DuPont v. DuPont, supra.* That the relief afforded a deserted wife by the Family Court is inadequate is particularly evident from the

order entered by that court in the proceeding upon which defendant relies. Such order was based on that court's concept that under the criminal law a husband is relieved of the duty to support his wife if she has earning capacity and is employable. If it caused the court to conclude that the wife was not in destitute and necessitous circumstances, and I can conceive of no other connection in which it might have been considered, such concept was of doubtful validity. See *State v. Sharp, supra,* where the Superior Court said: "Therefore, whenever a husband, without just cause, neglects or refuses to provide for the support and maintenance of his wife and thereby places her in such a situation that she stands in need of the necessaries of life, it is not material that they are supplied *by her own labor* or by sympathizing relatives, friends, or strangers, so that she does not in fact suffer from privation. He is guilty if he leaves her in such circumstances that, *without her own efforts* or outside help, she would lack the necessaries of life." In saying that the Family Court's concept was of doubtful validity I am not unmindful of the provisions of paragraph (b) of § 502 which was enacted some years after the *Sharp* case. Certainly it was not the legislative intent in enacting that subsection to relieve a deserting husband of his duty of support whenever it appeared that the wife might have "earning capacity" no matter how limited. Rather does it seem implicit in the language of paragraph (b) that the earning capacity of the wife should be at least sufficient to provide her with the necessaries of life. If her earning capacity is not sufficient to this end the husband's duty is not relieved. On the other hand, if the Family Court's understanding of the law was correct, then it further illustrates that the remedy afforded in that court is wholly inadequate.

But defendant argues that paragraph (b) of § 502 confers on the Family Court, in making an award, authority to consider the various factors therein mentioned. This argument goes to the question of the adequacy of the legal remedy as to which the Supreme Court has already ruled to the contrary, *DuPont v. DuPont, supra.* Moreover, paragraph (b) does not purport to set out the factors which the Family Court can consider *in making an award.* It expressly makes such factors pertinent only "[i]n construing the term 'destitute and

necessitous circumstances' ". I take it, therefore, that the enactment of paragraph (b) in no way altered the items which the Family Court could consider in arriving at a proper award, namely, food, raiment and shelter. *Donaghy v. State, supra.*

Defendant contends also that in order to maintain this action plaintiff must allege and prove that she is in destitute and necessitous circumstances. Whether or not this is so need not be here decided for the complaint does so allege and I am satisfied, after hearing the evidence, that the proof supports such allegation. Compare, *DuPont v. DuPont,* 33 *Del.Ch.* 364, 93 *A.2d* 500.

■ I conclude that under the circumstances here appearing plaintiff is not barred from maintaining this action by either the doctrine of election of remedies or that of res judicata. Nor is the action precluded because of an adequate remedy at law since the remedy in the Family Court is not "a sufficient remedy as that term is understood in the constitutional definition of the jurisdiction of the Court of Chancery." *DuPont v. DuPont,* 32 *Del.Ch.* 413, 85 *A.2d* 724.

I now proceed to consideration of the merits of the case. Defendant introduced testimony tending to show that the parties separated on a trial basis. I can not accept this testimnoy. First of all, plaintiff denied a separation on any such basis. Secondly, defendant's course of conduct following the separation is not consistent with his contention. Therefore, I regard defendant's leaving the marital home as desertion on his part.

■ Defendant contends also that plaintiff is precluded from any recovery in this action because of her own misconduct. While the evidence is clear that plaintiff's conduct, both before and since the separation, has been anything but exemplary, defendant's proof is quite inadequate to establish that he was justified in leaving the marital home. The case appears to me to be the typical one of parties who have long since lost their affection and respect for each other with the natural consequence that one or the other ultimately leaves the home. In this case the husband chose to. leave. Having done so

he can not avoid the duty to support his wife because of the unhappy relation which existed.

██ The testimony establishes that defendant's net income for the past three calendar years has averaged approximately $6,000 per year. It also appears that during the years when the parties lived together defendant gave to plaintiff but a small sum each month for the purpose of buying food for the family. Plaintiff's testimony was to the effect that she purchased her own clothing and supplied her own spending money from funds which she earned by doing odd jobs for her friends. It is clear that plaintiff had no regular employment and was dependent upon friends for monies required for at least a part of her necessaries. Defendant argues that since she did, during the period when the parties were living together, supply money for her needs by her own labor, any award to be made by the court should be confined to a percentage of the amount which defendant provided for food. Defendant thus asks the court to recognize and approve his failure to provide adequately for his wife during the years when the parties were living together. I decline to accede to this request. Under all of the circumstances of the case I am of the opinion that a fair award to plaintiff for her support is the sum of $135 per month. An order accordingly will be signed upon presentation.