## No. 9015.

## MARTIN v. THE PEOPLE.

Decided October 8, 1917. Rehearing denied December 3, 1917.

Defendant was convicted for a violation of the non-support act.

*Affirmed.*

1. STATUTES—*Reasonableness of.* Courts have no concern with the wisdom or reasonableness of legislative acts.

2. CONSTITUTIONAL LAW—*Nonsupport Act.* Chap. 179, S. L. 1911, providing for imprisonment of men who fail to support their wives and children, does not violate sec. 12, art. II of the constitution prohibiting imprisonment for debt.

3. CRIMINAL LAW—*Nonsupport Act—Validity of.* The power granted to courts by the nonsupport act, to suspend sentence upon the giving of a bond, is not in conflict with the constitutional requirement for sentence in felony cases; neither is it an infringement upon the pardoning power of the Governor.

4. CONSTITUTIONAL LAW—*Title of Act:* Where the particular case under consideration is clearly covered by the title, the nonsupport act must be accepted as valid under sec. 21, art. V of the constitution concerning the title of legislative acts.

The question of whether other portions of the act violate the section, not decided.

5. JUVENILE COURT—*Jurisdiction.* Jurisdiction of the juvenile court in the case under consideration sustained on authority of Colias v. People, 60 Colo. 230.

*Error to the Juvenile Court, City and County of Denver, Hon. Ben B. Lindsey, Judge.*

Mr. E. N. BURDICK, Mr. JOHN DEWEESE, Mr. EDGAR CAYPLESS, for plaintiff in error.

Mr. LESLIE HUBBARD, Attorney General; Mr. BERTRAM B. BESHOAR, Assistant; Mr. CLEMENT F. CROWLEY, for the people.

*En banc.*

MR. JUSTICE HILL delivered the opinion of the court.

THE plaintiff in error was convicted for the violation of our so-called non-support act (chapter 179, Laws 1911) for his willful failure to support his infant child. The errors assigned challenge the validity of this act, as well as the jurisdiction of the juvenile court. It is urged that the act is in conflict with both state and federal Constitutions; that it is meaningless, ambiguous, uncertain, and unintelligible; that it makes any distinction between a prosecution for a felony or misdemeanor dependent upon the whim or caprice of the trial judge, etc. A large portion of counsel's brief is directed to the wisdom of this act, its reasonableness, etc. As these are matters with which we, as a court, have no concern, we shall make no comments concerning them.

Attention is called to section 12, art. II, of our Constitution, which prohibits imprisonment for debt. The theory of counsel is that, as the act allows suspension of sentence upon giving bond to support the child and later the sentence should be enforced because the conditions of the bond had been violated, the plaintiff in error would then be sent to the penitentiary because he had not paid a debt fixed by the judgment of the court. This position is untenable. The sentence was for the crime for which the plaintiff in error was convicted. The statute provides a method whereby he can avoid its execution, but if he fails to do this, it still remains a sentence for the crime and not an imprisonment for debt. Similar provisions have been upheld in other jurisdictions. *People v. Heise,* 257 Ill. 443, 100 N. E. 1000; *State v. English,* 101 S. C. 304, 85 S. E. 721, L. R. A. 1915F, 977; *State v. Brewer,* 38 S. C. 263, 16 S. E. 1001, 19 L. R. A. 362, 37 Am. St. Rep. 752; *In re Wheeler, Petitioner,* 34 Kan. 96, 8 Pac. 276; *Musser v. Stewart,* 21 Ohio St. 353; *Ex parte Cottrell,* 13 Neb. 193, 13 N. W. 174.

It is urged that the power granted to the court to suspend sentence upon the giving of a bond is in conflict with the constitutional requirements for sentence in felony cases, also that it is an infringement upon the pardoning power of

the Governor, and that for these reasons the act is void. We cannot agree with either of these contentions.

In *Grundel v. People*, 33 Colo. 191, 79 Pac. 1022, 108 Am. St. Rep. 75, this court said: "In the absence of a permissive statute, the indefinite postponement of sentence upon one convicted of crime deprives the court of jurisdiction to pronounce sentence at a subsequent term. Such postponement is, in effect, a discharge of the prisoner, and therefore ousts the court after the expiration of the term of further authority over him. * * *"

This declaration involved a charge of gambling, where, in August, 1900, the district court records recite that defendants appeared, and upon their motion and request further proceedings were stayed upon payment of costs until the district attorney moved for sentence and their recognizance continued. No further steps were taken in the case until November, 1903, at which time the district attorney moved for sentence, which, it was held, the court was, at that time, powerless to impose, but this was over three years after the time of postponement. In *Young v. People*, 53 Colo. 251, 125 Pac. 117, the defendant entered a plea of *nolo contendere*. The court, on this plea, ordered that the cause be retired from the docket upon the payment of costs with leave to the people to have an *alias capias* for the defendant's arrest at any time and to reinstate the case for further proceedings. The defendant was thereafter arrested and brought before the court when sentence was imposed. This was about three months after the original suspension. It was held, as sentence was imposed within the term, the original order of suspension did not have the effect of an indefinite sentence. These cases were determined where there was no statute authorizing such suspensions, etc., for which reason neither controls this action. While section 4 of article XVIII of the Constitution defines the term "felony" wherever it may occur in the Constitution or laws to mean a criminal offense, punishable by death or imprisonment in the penitentiary and none other, it does not follow, in the absence of language in the Consti-

tution to that effect, that everyone convicted of felony must, of necessity, be sentenced to the penitentiary. The Constitution does not thus provide, and such has never been the uniform practice in this state. For instance, take one of our present larceny acts of live stock enacted first in 1877, amended and re-enacted in 1891, it makes the theft of an animal grand larceny, regardless of value. The punishment is imprisonment in the penitentiary or a fine, in the discretion of the court; yet from 1877 up to the present time we have never heard of any transgressor of this act complaining, though its violation is a felony, because he was let off with the more lenient punishment of a fine.as it permits. As used in section 4 of article XVIII of the Constitution, the phrase "and none other" means no other offense; that is it relates to the word "offense," and not to the character or mode of punishment. *People v. Godding,* 55 Colo. 579, 136 Pac. 1011.

The act under consideration provides for imprisonment in the penitentiary for a term not exceeding one year, but the court may, in lieu of this penalty, accept from the person convicted a bond, etc., running to the people, etc., in a sum not exceeding $1,000, as the court shall direct, conditional that the convicted party will comply with the provisions of the act, or perform the conditions required by the court for his compliance with the act in case he is placed on probation. It further provides that, in the interest of justice and for the protection of the wife and children, the court may suspend the sentence upon conditions to be named by the court, which conditions shall require the defendant to perform his duty towards his wife and children, and so long as such conditions are complied with, such sentence may be suspended, but upon failure to comply with such conditions or the conditions named in any bond. etc., he may be arrested, sentence passed or enforced, etc. It is these provisions which, it is claimed, interfere with the Governor's pardoning power as provided by the Constitution. We need not concern ourselves with the general rule upon the suspension of sentences, as our statute authorizes

a suspension in cases of this kind, and the courts are uni-
form in their holdings that the suspension of a sentence
like the one under consideration does not conflict with the
pardoning power of the Governor. *People ex rel. Forsyth
v. Court of Sessions,* 141 N. Y. 288, 36 N. E. 386, 23 L. R.
A. 856; *People v. Goodrich* (Sup.), 149 N. Y. Supp. 406;
*People v. Stickle,* 156. Mich. 557, 121 N. W. 497; *People v.
Heise, Supra; Ex parte Giannini,* 18 Cal. App. 166, 122 Pac.
831; *People v. Patrich,* 118 Cal. 332, 50 Pac. 425; *State ex
rel. Buckley v. Drew,* 75 N. H. 402, 74 Atl. 875; *State v.
Osborne,* 79 N. J. Eq. 430, 82 Atl. 424; *Marks v. Wentworth,*
199 Mass. 44, 85 N. E. 81; *Belden v. Hugo,* 88 Conn. 500,
91 Atl. 369; *State v. Everitt,* 164 N. C. 399, 79 S. E. 274,
47 L. R. A. (N. S.) 848; *St. Hilaire, Petitioner,* 101 Me. 522,
64 Atl. 882; *Fults v. State,* 2 Sneed (34 Tenn.) 232.

As was well said by the Court of Appeals of New York
in *People ex rel. Forsyth v. Court of Sessions,* 141 N. Y.
at page 294, 36 N. E. at page 388, 23 L. R. A. 856:

'The suspension of the sentence simply postpones the
judgment of the court temporarily or indefinitely, but the
conviction and liability following it, and all civil disabilities,
remain and become operative when judgment is rendered.
A pardon reaches both the punishment prescribed for the
offense and the guilt of the offender. It releases the punish-
ment and blots out of existence the guilt, so that in the
eye of the law the offender is as innocent as if he had
never committed the offense. It removes the penalties and
disabilities and restores him to all his civil rights. It makes
him, as it were, a new man, and gives him a new credit
and capacity."

In *People v. Stickle,* Michigan's wife-abandonment stat-
ute was under consideration. It is quite similar to ours.
In passing upon this question, the court, 156 Mich. at page
563, 121 N. W. at page 499, said:

"The power to suspend sentence and the power to grant
reprieves and pardons are distinct and different in origin
and in nature. It has never been supposed that the power
of courts to suspend sentence was other than a judicial

function. It has been frequently and constantly exercised by courts of record before and since the adoption of the Constitution. * * * Assuming the power to be, as it was at common law asserted to be, a power inherent in courts, no new power is conferred upon courts when the Legislature in terms authorizes courts to suspend sentence. * * * We do not find in the language employed in the act or in its probable effect if enforced any encroachment upon the exclusive power of the executive to grant pardons."

Similar language will be found in many of the other cases cited, which line of reasoning leads irresistibly to the conclusion that this portion of the act is not in conflict with the Governor's constitutional power to pardon. The title of the act under consideration reads: 'An act to compel men to support their wives and children and providing that persons who violate this act shall be guilty of a felony, and concerning the powers of courts in such cases."

It is urged there are two subjects in the act, while but one in the title, for this reason that it violates the provisions of section 21, article V of our Constitution. It is claimed that the title limits its provisions to compel men to support their wives and children, that is, their children by such wives, while in the body of the act it attempts to compel men to support women not their wives and illegitimate children. Section 21 of article V of the Constitution provides that the title to such laws as this shall contain but one subject, which shall be clearly expressed in the title, but if any subject shall be embraced in any act which shall not be expressed in the title, that such act shall be void only as to so much thereof as shall not be so embraced. The record discloses that the plaintiff in error is the father of the child in question; she was born during lawful wedlock; hence a legitimate child. Her case is clearly covered by the title of the act, for this reason that portion of it must be accepted as valid by the terms of the section of the Constitution which counsel seek to take advantage of. Whether that portion of the act which they claim pertains to illegitimate children is valid or not can well be left for

determination until a case involving that question is before us.

Counsel have omitted to present any reasons or cite any cases tending to disclose that this act violates the Constitution of the United States, for which reasons we will not discuss that assignment. The jurisdiction of the juvenile court (in this case) is fully sustained by the reasoning in *Colias v. People,* 60 Colo. 230, 153 Pac. 224, pertaining to section 2 of the act creating that court.

Perceiving no prejudicial error for any reason presented in support of the assignments of error urged, to which this opinion is limited, the judgment will be affirmed.

Mr. Justice White not participating.

Mr. Justice Teller concurs specially in the judgment on the ground that the plaintiff in error is not shown to be affected by those provisions of the act which he alleges are in conflict with the Constitution; hence he cannot be heard to question its constitutionality.