### No. 27,141.

THE STATE OF KANSAS, *Appellee,* v. AXEL WOHLFORT, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Former Jeopardy—Applies Only to Strictly Criminal Prosecutions.* The doctrine of former jeopardy applies only to strictly criminal prosecutions, and a recovery in an action for a wrong which is both private and public in its nature is not a bar to a prosecution for the wrong which under the statute constitutes a public offense.

2. HUSBAND AND WIFE—*Abandonment—Defenses—Previous Action for Alimony and Contempt.* In a prosecution under the wife-desertion act it appeared that the wife had previously brought a civil action for alimony in which an order granting temporary alimony had been made, with which defendant had refused to comply. To enforce compliance with the order, defendant was adjudged by the court to be in contempt. In the prosecution of the criminal action the defendant presented a plea in bar contending that the contempt proceeding was in effect a criminal proceeding and that the judgment in that proceeding was a bar to a prosecution under the wife-desertion act. *Held,* that the order adjudging the defendant to be in contempt having been made was a part of a civil action, and was not a bar to a prosecution by the state for a violation of the wife-desertion act.

---

Criminal Law, 16 C. J. pp. 97 n. 57, 235 n. 10, 236 n. 25, 281 n. 2, 778 n. 96, 1063 n. 85; 8 R. C. L. 137. Contempt, 6 R. C. L. 503. Evidence, 23 C. J. p. 12 n. 39. Husband and Wife, 30 C. J. pp. 529 n. 23, 1109 n. 90, 1110 n. 92, 1111 n. 9, 22.

3. SAME—*Abandonment — Evidence — Record of Civil Proceedings.* No error was committed in excluding the record of proceedings in the civil case.

4. SAME—*Abandonment—Admissibility of Evidence.* Other objections to the admission and exclusion of evidence are held to be without material error.

5. SAME—*Abandonment—Instructions.* The instructions refused and also those given have been examined and the rulings are held to be without error.

6. SAME—*Abandonment—Sufficiency of Evidence.* The evidence is deemed to be sufficient to uphold the verdict and judgment.

Appeal from Clay district court; FRED R. SMITH, judge. Opinion filed March 12, 1927. Affirmed.

*Park B. Pulsifer, Clyde L. Short,* both of Concordia, and *C. Vincent Jones,* of Clay Center, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *John F. McClure,* county attorney, and *W. D. Vance,* of Belleville, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This was a prosecution under the wife-desertion act, wherein the defendant, Axel Wohlfort, was convicted, the jury finding that the defendant had neglected and refused without just cause to provide for the maintenance and support of his wife, Anna F. Wohlfort.   There was evidence tending to show that the Wohlforts were married in 1911 and lived together as husband and wife until December 15, 1922.   They had resided for a time on the Wohlfort farm with defendant's family, but had little success in farming, and early in 1922 they moved to Chicago, Ill.   There they took an apartment and purchased the furniture therein with money borrowed from a sister of his wife, Anna, for which they executed a note.   He found some work there at small wages and turned over most of his earnings to his wife, in whose name the bank account was kept.   In 1922 his wife became ill with an ailment of the heart, and in October of that year she underwent a gall-bladder operation which left her in a weakened condition.   The hospital bill was paid out of the earnings of the defendant.   In December following he left Chicago, saying he was going to Topeka to find work, and the only means that was left with her was some furniture which she afterwards sold for $155, an old automobile for which she received $157.95, and a bank deposit of $10.   He did not stay long in Topeka, but soon went to his mother's home in Scandia, where he has since remained.   He wrote to his wife occasionally until March, 1923, but did not send her any money.   Not hearing from him, she

came back to Scandia in September, 1923, and shortly afterwards brought an action in Republic county to obtain alimony from him, which is still pending. A number of proceedings have been had in that action looking towards the furnishing of support to his wife, and there was an order made that he pay $50 per month as temporary support, pending the further order of the court, and $75 for suit money, as well as $50 as temporary attorney fees. As no payments were made under the order, the court on application found him guilty of contempt and ordered that he be confined in the county jail until he purged himself by paying the money as ordered by the court. The history of these proceedings may be found in *Wohlfort v. Wohlfort,* 116 Kan. 154, 225 Pac. 746, and in 118 Kan. 292, 235 Pac. 111. Certain personal property of the defendant was seized under the order made, which was sold for $338.25, which constitutes all that has been paid towards the support of his wife since December, 1922. During the pendency of the alimony case the prosecution of the criminal case was begun in Republic county, which was transferred by change of venue to Clay county, where the conviction was had.

It is contended, first, that the court erred in overruling the plea in bar and abatement filed by defendant, in which was set out at length the proceedings in the alimony case, including the proceedings in contempt. It is argued that the demurrer to the plea in bar conceded the facts stated to be true, and that the present prosecution is in effect putting him twice in jeopardy for the same act or offense. It is said that since the court on the civil side had assumed jurisdiction to fix the duty of a delinquent to pay money for maintenance, it would be manifestly unjust to charge him under a criminal statute for what had already been determined in the civil action. A citation for contempt on the civil side, it is said, was in effect a criminal proceeding and the judgment on the contempt proceeding is a bar to the prosecution under the desertion act.

The doctrine of former jeopardy applies only to strictly criminal prosecutions. Until a person is put upon trial before a court of competent jurisdiction upon an indictment, information or complaint, he is not in legal jeopardy. The contempt proceedings arose, as we have seen, in a civil case in which temporary alimony was allowed as well as attorneys fees, and as these orders were not complied with, proceedings in contempt were instituted to enforce compliance with the orders. As the wife was in necessitous circum-

State v. Wohlfort.

stances, the state upon her complaint began this prosecution alleging that he had deserted her, and without just cause had neglected and refused to provide for her support and maintenance in violation of the desertion act. (R. S. 21-442.) The first was a civil action between private parties to enforce private rights and in which no information or indictment was filed, and there was no arraignment and no conviction for a public offense. The contempt proceeding was a part of the civil case wherein the court took what was deemed to be the necessary steps to enforce its orders and preserve its dignity. The second was strictly criminal in character, brought by the state against the defendant for a redress of a public wrong and for punishment of a public offense. The fact that an illegal act may make a wrongdoer liable to pay compensation or damages and also subject him to criminal prosecution is not a ground for abatement of the latter. Both may arise out of the same wrong and be largely supported by the same character of testimony, but the parties are different, the purpose is not the same, and the judgments are not the same. In the civil action only a preponderance of the evidence is necessary to .a result, while in the criminal the state must satisfy the jury beyond a reasonable doubt. Defendant cites *State v. Miller,* 111 Kan. 231, 206 Pac. 744, which was a prosecution under the desertion act, following a divorce proceeding in which the wife had been awarded the custody of a child and the husband was ordered to pay a considerable amount to support her and the child, and in obedience to the order property and money had been delivered to her to meet the required payment. Afterwards the child became ill, and when much money had been expended to relieve her, she was in necessitous circumstances which the father failed and refused to relieve. The mother then caused the arrest of the father for failure to support his child. He contended that as he had obeyed the orders of the court in the civil case and had met the requirements for the support of the wife and child, he was not subject to prosecution by the state for failing to make still further provisions for the child, but the court held that the prosecution could be maintained by the state. In that opinion reference was made to *State v. Coolidge,* 72 Wash. 42, which is cited by the defendant in this case. That case, however, arose upon a different state of facts, and while language is used in the opinion inconsistent with the general doctrine as to former jeopardy, it cannot be regarded as a controlling authority. In

5—123 Kan.

*Jones v. Mould,* 151 Ia. 599, the question arose as to the effect of a contempt proceeding and whether it could be regarded as former jeopardy. The court said:

"Neither does the plaintiff make a case which entitles him to a plea of former jeopardy, or former adjudication. The constitutional provision upon this subject applies only to charges of crime; and contempt, though proceedings for its punishment are generally spoken of as quasi criminal, is not a crime." (p. 607.)

Another case where there was an assault upon an attorney in the view of the court, while it was in session, and there had been punishment for the contemptuous conduct, it was held that punishment of the contempt by fine or imprisonment is not a criminal proceeding, and was no bar to a prosecution for a breach of the peace committed in committing the contempt. As to the contempt the court remarked:

"This is not a criminal proceeding within the meaning of the statute. The fine and imprisonment which the court is authorized to inflict for a contempt are not intended as a punishment for a crime committed in violation of the criminal law; and punishment for the contempt is no bar to a prosecution for a breach of the peace, notwithstanding the universal maxim that no one shall be put in jeopardy twice for the same offense." (*Middlebrook v. The State,* 43 Conn. 257, 267.)

It has been said:

"The public and the person injured by a crime each has a distinct although concurrent remedy, as a criminal act is both a private and public wrong, and these remedies may operate simultaneously. Recovery in a civil action does not bar a criminal prosecution, and therefore as a general rule the pendency of a civil action cannot be pleaded either in abatement or in bar." (16 C. J. 97.)

On the general doctrine that former jeopardy applies only to criminal proceedings, see 16 C. J. 235; 8 R. C. L. 137.

There is complaint of the refusal to admit a record of the proceedings in the civil case and also of another case brought against the mother and sisters of defendant for alienation of the affections of defendant for his wife. The proposed evidence was not competent. It would not have aided in determining whether the defendant had just cause for deserting his wife or for neglect and refusal to provide for her support and maintenance. The defendant would have had cause to complain of the admission of the record in the civil case, which included contempt orders, if it had been received over his objection. Rulings finding that the defendant should contribute to his wife's support might have had a prejudicial influence with the jury

State v. Wohlfort.

in the present case. The bringing of the alimony case, however, was brought out by the defendant in the cross-examination of his wife in which she stated that she did not have him arrested for desertion until sometime after the institution of the civil action. The defendant drew from her testimony that she had procured an order from the court requiring him to pay alimony to her. The question in this case is, Was the wife in destitute circumstances, and had the defendant neglected her or refused to provide support and maintenance for her without just cause? No evidence pertinent to these issues was excluded.

Error is assigned on the admission of evidence relating to the sickness and treatment of his wife in a Concordia hospital sometime in the latter part of December, 1924. It appeared that during this time the defendant did not visit her or aid in any way in furnishing nurses or doctors, and there is complaint, too, that the court failed to strike this testimony out when it was shown that defendant had not known of that sickness. It appears, however, that defendant admitted that he knew that his wife was in the hospital and also that he did not visit her or write to her, and did not even make inquiry as to her condition, nor did he make any provision for paying the hospital expenses. The obligation of a husband to support and maintain his wife includes not only shelter, food and clothing, but also medicine, medical attendance and nursing. (*State v. Waller*, 90 Kan. 829, 136 Pac. 215.) The evidence was admissible.

There is a further objection to the admission in evidence of letters written by defendant's attorney to the representatives of his wife in which it was stated that defendant was execution proof, living on the bounty of his mother, and that she had some means while he had none. Since it appeared that he directed what should be written in the letter, the objection to their admission was not good. They tended to show his attitude towards his wife and the grounds upon which he declined to furnish support.

Defendant contends that the court erred in refusing an instruction that the expression "without just cause" means without a cause upon which the ordinary man would act in like circumstances. The definition of this statutory offense was not overlooked by the court. After advising the jury as to the essential elements of the offense charged and after explaining that destitute and necessitous circumstances means under the law, "needing the necessaries of life which cover not only primitive needs, things absolutely indispensable to

human existence and decency, but those things also which are in
fact necessary to the particular person having the right to demand
support and maintenance." The court then took up the meaning
of the term "just cause" and gave the following instruction:

"You are instructed that the term 'just cause' as used in the law, means
any cause of sufficient import to relieve the defendant, who under the law is
charged with the duty of providing for the support and maintenance of his
wife, from such duty and legal obligation, such as mental incapacity or
physical disability of the defendant, rendering him unable to provide for the
support and maintenance of such wife; or financial conditions which the de-
fendant has honestly, in good faith, endeavored to overcome. The term 'just
cause' cannot be defined with absolute accuracy, and may arise from any cause
or combination of causes or circumstances, and you are to determine from
the evidence in this case whether or not the defendant did or did not act
with just cause in whatever he did or failed to do with relation to the offense
with which he is charged in this case; and in considering such conditions and
circumstances, you should consider the ability to earn a livelihood, and to
determine whether the defendant did all that he could or should have done
under the circumstances shown."

The defendant has no valid grounds for complaining of the in-
structions refused or given. He complains also of the overruling
of his motion for a new trial. It is argued that the evidence shows
that the purpose of the prosecution was not brought in the interest
of the state or to vindicate the law, but was actually brought to
obtain property and money from defendant's mother to which the
defendant had no right. The evidence tends to show that defend-
ant's wife was in destitute circumstances, that he deserted her and
neglected to provide for her support when he had knowledge of her
circumstances, and when he could have made some provision for her.
He makes no complaint of the character or reputation of his wife.
His own testimony was that she was industrious and helpful when
they lived together upon the farm, and further, that he knew that
she was not in good health; he admitted that he had agreed to send
for her when he returned to Kansas, but never did. He was shown
to be a middle-aged man, able to work, but provided nothing towards
the support of his wife in a period of about three years, and has
resisted every attempt to make him furnish support or maintenance
for her.

We find no lack of evidence in support of the verdict and judg-
ment, and no material error is found in the rulings of the court
during the trial.

The judgment is affirmed.