(837 P.2d 846)

No. 66,981

STATE OF KANSAS, *Appellee,* v. BRADLEY N. KIRKLAND, *Appellant.*

Opinion filed September 18, 1992.

*Joseph L. Dioszeghy,* of Overland Park, for appellant.

*Roger A. Nordeen,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before ELLIOTT, P.J., LARSON, J., and DANIEL L. BREWSTER, District Judge, assigned.

LARSON, J.: Bradley N. Kirkland appeals his jury conviction of nonsupport of a child, contending (1) K.S.A. 1991 Supp. 21-3605(1)(a) is unconstitutionally vague and indefinite; (2) he was denied a fair trial because the trial judge instructed the jury that "[t]he unavailability of a child for visitation does not suspend the obligation of a party ordered to pay support;" and (3) the com-

plaint upon which his conviction is based is fatally defective on its face.

A romance between Kirkland and Valerie Dvorak, now Valerie Minnich, resulted in the birth of L.R.D. in November of 1987. Kirkland was involved in the birthing process and has acknowledged he is the father of the child.

In March of 1988, the parties agreed upon a court order that set forth Kirkland's paternity of L.R.D. and ordered him to pay $400 per month child support. Visitation was not ordered.

Kirkland and Minnich became engaged, but separated in mid-1988 when Minnich went to Texas to assist in the care of her ill father.

In late December of 1988, a conversation occurred between the parties concerning Kirkland's relationship with Minnich and L.R.D. Minnich testified she told Kirkland she wanted to forget everything that had ever happened between them, but he was always welcome to see L.R.D. and should continue paying child support. Kirkland recalled Minnich requesting that he never see L.R.D. again, not pay any more child support, and not have any form of contact with either of them.

In January 1989, Minnich moved out of her apartment in Olathe and subsequently occupied different residences in Kansas and Texas. Kirkland claims to have made unsuccessful attempts to contact her, while Minnich testified that her whereabouts were capable of being determined through relatives and friends. Kirkland made no child support payments between January and October of 1989 and was charged with criminal nonsupport of a child in violation of K.S.A. 1991 Supp. 21-3605(1).

Evidence at the jury trial showed Kirkland had earned income both from regular employment and as a free-lance artist during the time period in question. Evidence was also presented concerning L.R.D.'s expenses, Kirkland's expenses, that Kirkland was under court order to make child support payments, and that he made no child support payments during that time period. Kirkland justified his nonpayment on the grounds that Minnich had prevented him from seeing L.R.D. and claimed that because he was prevented from enjoying visitation he should not be obligated to pay child support.

Over Kirkland's objection, the trial judge issued instruction No. 9 to the jury: "The unavailability of a child for visitation does not suspend the obligation of a party ordered to pay support." The trial judge based the instruction on K.S.A. 1990 Supp. 60-1612(a).

Kirkland was found guilty. Following the denial of his motion for new trial, he was sentenced to a term of one to three years. Kirkland appeals. We affirm.

*Is K.S.A. 1991 Supp. 21-3605(1)(a) unconstitutionally vague and indefinite?*

K.S.A. 1991 Supp. 21-3605(1)(a) states: "Nonsupport of a child is a parent's failure, neglect or refusal without lawful excuse to provide for the support and maintenance of the parent's child in necessitous circumstances."

Kirkland contends the phrase "without lawful excuse" is unconstitutionally vague and indefinite. He argues the phrase is not commonly understood and has not been judicially defined, and because it does not have a well-settled legal meaning, a trial judge is allowed to decide without any fixed standard what conduct is prohibited in a particular case.

Although Kirkland complained at the trial court level that the term "without lawful excuse" was improperly defined as meaning "without just cause," he failed to specifically object to the constitutionality of the statute.

It is our general rule that when constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate court for review. *State v. Goss,* 245 Kan. 189, 193, 777 P.2d 781 (1989).

Exceptions to the foregoing rule exist and we have held that:

"[I]f a newly asserted issue involves only a legal question arising on proved or admitted facts which will be finally determinative of the case, or if consideration is necessary to serve the ends of justice or to prevent a denial of fundamental rights, an appellate court may consider the issue even though not considered by the trial court." *State v. Anderson,* 12 Kan. App. 2d 342, Syl. ¶ 1, 744 P.2d 143 (1987).

Furthermore,

" 'The constitutionality of a statute should be considered in any action where it is necessary in order to determine the merits of the action or where the issues cannot be intelligently decided without doing so, not-

withstanding the failure of the parties to raise the constitutional question, failure to plead the question, or failure to present the question to the trial court.' " *Van Sickle v. Shanahan,* 212 Kan. 426, 434, 511 P.2d 223 (1973) (quoting *State v. Nelson,* 210 Kan. 439, 502 P.2d 841 [1972]).

We deem it appropriate to address this issue, subject to the following rule:

"An appellate court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citation omitted.]" *Guillan v. Watts,* 249 Kan. 606, 618, 822 P.2d 582 (1991).

*State ex rel. Murray v. Palmgren,* 231 Kan. 524, 532, 646 P.2d 1091 (1982), *reh. denied* 459 U.S. 1229 (1983), sets forth the rules regarding vagueness:

" 'The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a commonsense determination of fundamental fairness.' [Citation omitted.]"

In *State v. Lackey,* 232 Kan. 478, 479, 657 P.2d 40 (1983), our Supreme Court stated:

" 'It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.' [Citation omitted.]"

*Guillan v. Watts* sets forth our obligation in this manner: "In determining whether a statute is void for vagueness, two inquiries are appropriate: (1) whether the statute gives fair warning to those persons potentially subject to it, and (2) whether the statute adequately guards against arbitrary and discriminatory enforcement." 249 Kan. at 618.

In *Kansas City Millwright Co., Inc. v. Kalb,* 221 Kan. 658, 663, 562 P.2d 65, *modified* 221 Kan. 752 (1977), Justice Schroeder

adopted the language of *Unified School District No. 255 v. Unified School District No. 254,* 204 Kan. 282, 288, 463 P.2d 499 (1969): " 'A statute will not be declared void for vagueness and uncertainty where it employs words commonly used, previously judicially defined, or having a settled meaning in law.' "

Although the rule is normally stated that criminal statutes must be strictly construed, our Supreme Court has stated that the Desertion Act, L. 1911, ch. 163, § 1, upon which K.S.A. 1991 Supp. 21-3605 is based, is remedial in purpose even though it provides for the infliction of a severe penalty; because its object is to insure the observance of a high, moral, and social duty, it must be liberally construed in order that the legislative intent may be accomplished. *State v. Waller,* 90 Kan. 829, 836, 136 Pac. 215 (1913). The legislative intent of K.S.A. 1991 Supp. 21-3605(1)(a) is to provide support for necessitous children and in this endeavor the statute holds criminally liable those parents who fail to provide support. *State v. Rupert,* 247 Kan. 512, 516, 802 P.2d 511 (1990).

In *State v. Wohlfort,* 123 Kan. 62, 67, 254 Pac. 317 (1927), the defendant was convicted under the Desertion Act of neglecting and refusing without just cause to provide for maintenance and support of his wife. On appeal, he contended the trial court erred by refusing to instruct the jury that " 'without just cause' means without a cause upon which the ordinary man would act in like circumstances."

Our Supreme Court affirmed the defendant's conviction and approved the trial court's instruction regarding the meaning of the term "just cause":

" 'You are instructed that the term "just cause" as used in the law, means any cause of sufficient import to relieve the defendant, who under the law is charged with the duty of providing for the support and maintenance of his wife, from such duty and legal obligation, such as mental incapacity or physical disability of the defendant, rendering him unable to provide for the support and maintenance of such wife; or financial conditions which the defendant has honestly, in good faith, endeavored to overcome. The term "just cause" cannot be defined with absolute accuracy, and may arise from any cause or combination of causes or circumstances, and you are to determine from the evidence in this case whether or not the defendant did or did not act with just cause in whatever he did or failed to do with relation to the offense with which he is charged in this case; and in considering

such conditions and circumstances, you should consider the ability to earn a livelihood, and to determine whether the defendant did all that he could or should have done under the circumstances shown.' " 123 Kan. at 68.

The provision relating to a criminal violation for nonsupport of a spouse is found in K.S.A. 1991 Supp. 21-3605(2)(a) and provides that: "Nonsupport of a spouse is an individual's failure without just cause to provide for the support of such individual's spouse in necessitous circumstances."

The reason for the use of the phrase "without lawful excuse" to relate to nonsupport of a child and that of "without just cause" to relate to nonsupport of a spouse is not known. The Kansas Judicial Council Advisory Committee on Criminal Jury Instructions in considering this problem stated:

"It is arguable that a juror might have no difficulty understanding what is meant by the term 'without just cause,' but would have some difficulty in understanding the term 'without lawful excuse.' Since the Committee does believe that 'without just cause' is more understandable to jurors than 'without lawful excuse,' and since there are no statutory 'lawful excuses,' it has concluded 'without just cause' should be used." PIK Crim. 2d 58.06, comment, pp. 227-28 (1986 Supp.).

The jury in this case was instructed that in order to find Kirkland guilty it was required to find that Kirkland "without just cause" failed to provide for the support for L.R.D., which is the equivalent of such failure being "without lawful excuse."

The Supreme Court of Delaware has determined that the terms in its criminal nonsupport act "without just cause," relating to a husband's refusal to support his wife, and "without lawful excuse," referring to a parent's refusal to support his or her children, are synonymous. *Donaghy v. State,* 29 Del. 467, 100 A. 696, 709 (1917). The Supreme Court of Appeals of West Virginia also has held the terms in its criminal nonsupport statute "without just cause" and "without lawful excuse" to be equivalent. *State v. Constable,* 90 W. Va. 515, 112 S.E. 410, 411 (1922).

That portion of K.S.A. 1991 Supp. 21-3605(1)(f), which states that "[a] preponderance of the evidence shall be sufficient to prove that the defendant is the father or mother of such child" was found to be unconstitutional by the Kansas Supreme Court in *State v. Rupert*; however, the remaining provisions of the

statute were found constitutional, although the specific argument made herein was not made to the *Rupert* court.

We approve the language of PIK Crim. 2d 58.06 and hold that the wording "without just cause" and "without lawful excuse" as applied to the nonsupport statute are equivalent. This judicial construction of the statute renders it constitutional without question, but it is also constitutionally sound as written.

Three of our sister states have recently specifically addressed the issue of whether the phrase "without lawful excuse" in a criminal nonsupport statute is constitutionally void for vagueness. See *Taylor v. State*, 710 P.2d 1019 (Alaska App. 1985) (not vague); *State v. Timmons*, 75 Or. App. 678, 706 P.2d 1018 (not vague), *rev. denied* 712 P.2d 110 (1985). But see *State v. Richmond*, 102 Wash. 2d 242, 683 P.2d 1093 (1984) (unconstitutionally vague). Each state has a criminal nonsupport statute similar to ours. A fourth state, Arizona, determined in the 1920's that the phrase "without lawful excuse" in that state's criminal nonsupport statute was not void for vagueness. *Branham v. State*, 33 Ariz. 170, 263 Pac. 1 (1928).

In 1927, our Supreme Court in *Wohlfort* defined the term "just cause" in the predecessor to our current nonsupport statute as an inability to provide support. 123 Kan. at 68. This definition provides realistic guidance to determine what constitutes a defense to the crime of criminal nonsupport. See *Taylor*, 710 P.2d at 1023 n.7. The phrase "without lawful excuse" in K.S.A. 1991 Supp. 21-3605(1)(a) is not unconstitutionally vague and indefinite. The term has been previously judicially defined and a defendant is on notice regarding what constitutes a lawful excuse for nonpayment of support. Fair warning has been given to those persons potentially subject to its provisions, and the definition adequately guards against arbitrary and discriminatory enforcement.

*Was Kirkland denied his due process rights to a fair trial when the jury was given instruction No. 9 stating that "[t]he unavailability of a child for visitation does not suspend the obligation of a party ordered to pay support"?*

Kirkland argues the instruction relieved the State of its duty to prove each element of criminal nonsupport beyond a reasonable doubt, negated his defense for not paying support as a matter of

law, and imposed absolute liability upon him. He contends that whether concealment of L.R.D. by her mother (which was a contested issue at trial) constituted "just cause" for his failure to pay child support was a question of fact for the jury.

The trial court determined as a matter of law that lack of visitation does not suspend a parent's duty to pay child support. "This court's review of conclusions of law is unlimited." *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

The trial court utilized K.S.A. 1991 Supp. 60-1612(a) as authority for this instruction. This provision states:

"If a party fails to comply with a provision of a decree, temporary order or injunction issued under K.S.A. 60-1601 *et seq.,* the obligation of the other party to make payments for support or maintenance or to permit visitation is not suspended, but the other party may request by motion that the court grant an appropriate order."

Our court held in *Whisler v. Whisler,* 9 Kan. App. 2d 624, 632, 684 P.2d 1025 (1984): "Although closely linked, the right of visitation and the duty to pay child support are not reciprocal in every instance." The obligation to pay child support is not terminated because the obligor parent was refused visitation by the custodial parent. There are adequate remedies available to compel visitation by proper motion in the district court. It is also improper for there to be a contractual agreement between the father and mother to legally reduce or terminate the father's continuing legal obligation to support his children. *Thompson v. Thompson,* 205 Kan. 630, 633, 470 P.2d 787 (1970).

It also has been held in other states that in construction of a criminal nonsupport statute, the parents' lack of visitation does not justify noncompliance with a support order. See *State v. Beck,* 238 Neb. 449, 471 N.W.2d 128 (1991); *Almanza v. State,* 365 S.W.2d 360 (Tex. Crim. 1963).

The trial court did not err by giving instruction No. 9 to the jury. Kirkland's obligation to pay child support was not terminated because he was not enjoying visitation with his child.

This instruction has nothing to do with whether Kirkland had the financial ability to pay child support, which in a proper factual situation may be a valid defense. Kirkland's adamant refusal to

pay support when the ability to do so existed is not justified by the lack of visitation and the jury was properly so instructed.

*Is the complaint upon which the conviction was based fatally defective?*

Kirkland contends for the first time on appeal that the complaint is fatally defective because it omits the word "willfully" although it contends that he did "unlawfully and feloniously without lawful excuse neglect to provide for the support and maintenance of his minor child."

The holding in *State v. Hall,* 246 Kan. 728, 765, 793 P.2d 737 (1990), is fatal to this argument, and we also hold the complaint substantially followed the statutory language. Kirkland clearly and correctly understood the basis of the complaint. This contention has no merit. See *State v. Graham,* 247 Kan. 388, 395, 799 P.2d 1003 (1990); *Hall,* 246 Kan. at 754.

Affirmed.