STATE OF CONNECTICUT *v.* JAMES BOYD

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 1-22203

Argued May 16—decided September 1, 1967

*Robert N. Grosby,* public defender, with whom, on the brief, was *Joseph D. Harbaugh,* chief public defender, for the appellant (defendant).

*Edward J. Capasse,* assistant prosecuting attorney, for the appellee (state).

PRUYN, J. The defendant was convicted, after a trial to the court, of the crime of nonsupport, and on this appeal from the judgment he has assigned as error the conclusion of the trial court upon all the evidence that he was guilty beyond a reasonable doubt. General Statutes § 53-304.

On examining the entire evidence, which we must do in considering this assignment of error in order to determine whether the court erred in its conclusion of guilt, having regard to its finding only to ascertain its decision on conflicting evidence; *State* v. *Pundy,* 147 Conn. 7, 8; the court could reasonably find the following facts: The defendant and his wife were married twenty years ago and still remain married to each other. Four children were born of this marriage, of whom one died, another is married, a third one lives in the south and is supported by the mother's family, and the fourth one, James Boyd, Jr., a minor, the subject of this action, lives with his mother. The defendant and his wife

separated twelve years ago and the defendant for about twelve years has not supported this minor son. The son has been supported under the aid to dependent children program by the state welfare department, which has not been reimbursed and at whose instance this action was brought. The defendant's wife has never asked the defendant to support their son, and the defendant testified that he was willing so to do. The defendant saw the child in a poolroom every day and always gave him some money, $2 or $3, when he asked for it. The family relations office sent a notice to the defendant by regular mail to his residence address to appear for a hearing. The defendant did not appear in response to this notice and testified that he had never received it.

Section 53-304 provides that any person who "neglects or refuses" to furnish reasonably necessary support to his child shall be guilty of nonsupport, "unless he shows to the court before which the trial is had that, owing to physical incapacity or other good cause, he is unable to furnish such support." The basic argument of the defendant on this appeal is that the crime of nonsupport requires a criminal intent, a mens rea, as an essential element and that the evidence in this case does not establish any such intent.

While nonsupport of a wife or child was not a crime at common law, it has for nearly two and a half centuries been a crime by statute in Connecticut. 7 Col. Rec. 127-130 (1726-1735) ; *State* v. *Moran,* 99 Conn. 115, 117. The first sentence of the statute (§ 53-304) had its origin in substantially the same language in Public Acts 1881, c. 132. The essential basis of this crime is contained in the words "neglects or refuses" to furnish support. The statute has been amended from time to time; one amendment inserted the word "unlawfully" before the

words "neglects or refuses"; another made the crime a felony; but under the present statute the crime is a misdemeanor and the word "unlawfully" is omitted.

We need not concern ourselves in this case with any refusal by the defendant to support his son. A refusal presupposes a request. The evidence is clear that the defendant was never requested to furnish support. By no stretch of the imagination can the notice of a hearing sent by the welfare department to the defendant which the latter claimed never to have received be considered a request to furnish support.

We must therefore turn our attention to the word "neglects." "But the language of the statute which makes the nonsupport of wife or child a crime is not general or indefinite. It describes the offense with certainty and precision. No paraphrase nor circumlocution nor further description could make its spirit and intent plainer. The words 'neglect,' 'refuse' and 'support,' in relation to this subject, have a precise and fixed meaning in the speech of people, and are to be construed according to the commonly approved usage of the language." *State* v. *Moran,* supra, 118. The generally accepted meaning of the word "neglect" is to omit or not to do something that should be done. *Watson* v. *Hall,* 46 Conn. 204, 206; Funk & Wagnalls, New Standard Dictionary; Century Dictionary; Ballentine, Law Dictionary. The word "neglect" connotes a failure to fulfil a legal obligation. *State* v. *Jordan,* 142 Conn. 375, 378. The purpose of this statute is not only to prevent wives and children from becoming charges upon the public purse; *State* v. *Bickerton,* 2 Conn. Cir. Ct. 218, 220; "[t]he higher and more important object of the legislature of this State was to provide directly for unsupported wives and children, and to punish this offense against them,

and by fear of punishment to prevent the committing of such offenses. . . . For its economic protection and the general public welfare, the State is deeply concerned in the performance by a husband and father of the legal obligations which he has voluntarily assumed." *State* v. *Moran,* supra, 119. The duty of a father to support his minor children is one of the most fundamental duties and obligations of life. "A sense of duty pursues us ever. It is omnipresent, like the Deity. If we take to ourselves the wings of the morning, and dwell in the uttermost parts of the sea, duty performed, or duty violated, is still with us, for our happiness or our misery. If we say the darkness shall cover us, in the darkness as in the light our obligations are yet with us."[1]

The nonperformance of a duty may amount to a neglect of the duty and give rise to a logical and reasonable inference of an intent to neglect the duty. This is manifest in the case before us, for the failure of the defendant to support his minor son has extended over a period of twelve years. Certainly, the giving of small sums of money to his son cannot be construed as support or intention to support him.

While neglect has been held to involve something more than a failure without fault and "imports an omission accompanied by some kind of culpability in the conduct of the party"; *Lathrop* v. *Lathrop,* 78 Conn. 650, 652; a "[g]uilty intent may be presumed from the neglect of duty and the crime continues as long as the neglect does not cease." *People ex rel. Gottschalk* v. *Brown,* 237 N.Y. 483, 487. Under the old statute where the neglect or refusal had to be unlawful (see Rev. 1888, § 3402), the state in proving the unlawfulness of the neglect could rely

---

[1] Argument by Daniel Webster in "The Murder of Captain Joseph White," 6 Works of Daniel Webster 105 (18th Ed. 1881).

on the presumption, which the law provides, that the neglect is unlawful upon proof of the other elements of the offense, leaving to the defendant the proof by a fair preponderance of the evidence of any defense he may have. *State* v. *Schweitzer*, 57 Conn. 532, 543. And the statute does provide for a defense of inability to furnish support because of physical incapacity or other good cause.

From the long legislative history of this statute and the meaning of the words and phrases used therein we conclude that the crime of nonsupport does not require a guilty intent. On examination of the entire evidence, we see no error in the trial court's conclusion of guilt beyond a reasonable doubt.

There is no error.

In this opinion JACOBS, J., concurred.[2]

---

[2] This appeal was argued on May 16, 1967, before an appellate panel consisting of *Pruyn, Jacobs* and *Levine, Js.* Before the rendition of this decision, *Levine, J.*, became a judge of the Court of Common Pleas. The parties have stipulated that this appeal may be decided by *Pruyn* and *Jacobs, Js.*