STATE OF CONNECTICUT *v.* ALFRED MANSY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 3-3075

Argued November 3—decided December 12, 1969

*Steven P. Floman,* of New Haven, for the appellant (petitioner Rivenburgh).

*Jules Lang,* of Norwalk, for the appellee (defendant).

JACOBS, J. By information dated March 13, 1964, the defendant was charged with the crime of non-support in violation of § 53-304 of the General Statutes. On April 27, 1964, he signed with the family relations division of the Circuit Court a voluntary

agreement to support (§ 53-304 [c])[1] whereby he agreed to contribute $35 per week toward the support of his three minor children, effective April 27, 1964, and payable to the family relations division of the Circuit Court. On the same date, viz., April 27, 1964, the court made the following court entry: "The above agreement is hereby approved and ordered entered as an order of support." The then assistant prosecuting attorney thereupon nolled the criminal charge against the defendant.

On April 11, 1969, some five years after the nolle, the petitioner, Marcelle Mansy Rivenburgh, filed a motion in the Circuit Court praying a modification of the support order. The court denied pro forma the motion to modify the support order and granted the defendant's motion to erase. Practice Book § 94; Stephenson, Conn. Civ. Proc. § 77b. The question we are called upon to decide is whether the petitioner is entitled, in her capacity as a private party, to set the machinery of the courts into operation to redress a public wrong.

All of the American jurisdictions have statutes dealing with criminal liability of a parent for non-support of his children. See 4 Vernier, American Family Laws § 234, p. 60. As the statute is criminal, proceedings under it are initiated and conducted in the name of the state. See *State* v. *Bickerton,* 2 Conn. Cir. Ct. 218, 219; *State* v. *Peabody,* 25 R.I. 178, 179. The court "in a nonsupport case does not sit for the purpose of enforcing the divorce decree,

---

[1] "Sec. 53-304. NONSUPPORT. . . . (c) A written agreement to support made with the family relations division of the circuit court by the liable relative, when approved by a judge of the circuit court after his examination of such relative in court or in chambers and filed with said court, shall have the same force and effect as an order of support by the circuit court, and shall be modifiable and enforceable in the same manner as is provided herein for orders of support issued by the court."

and should not treat the prosecution as ancillary to the divorce case. The criminal proceeding is a complete, independent action; the father is criminally liable, not because he has failed to perform the divorce decree, but because he has failed to support his dependent . . . [children]." Note, 73 A.L.R.2d 960, 970.

In England, private prosecution is the basic system of criminal enforcement. Jackson, The Machinery of Criminal Justice in England (5th Ed.) p. 129; comment, "Private Prosecution: A Remedy for District Attorneys' Unwarranted Inaction," 65 Yale L.J. 209, 223. The department of the director of public prosecutions, a government agency, conducts the prosecution of the more serious offenses. Atkinson, "The Department of the Director of Public Prosecutions," 22 Can. B. Rev. 413, 415. "By the common law of England, which was brought to America by the colonists, the ordinary criminal prosecution was conducted by a private prosecutor in the name of the King." U.S. National Commission on Law Observance and Enforcement, Report on Prosecution, p. 6 (1931). But in the first years of the eighteenth century, the colonies began to do away with private prosecutions, and a system of public prosecutors was established. "The first statute was enacted in Connecticut in 1704, as follows: '. . . Henceforth there shall be in every countie a sober, discreet and religious person appointed by the countie courts, to be atturney for the Queen [this was in the reign of Queen Anne] to prosecute and implead in the lawe all criminals and to doe all other things necessary or convenient as an atturney to suppresse vice and immoralitie. . . .' " Id., p. 7, see 4 Col. Rec. 468 (1689–1706). The example set by Connecticut was soon followed in the other colonies. By the end of the century, official prosecutions by prosecutors had become established as the American

system. Moley, Politics and Criminal Prosecution, p. 58. Ever since 1704, prosecution of criminal offenses by private parties has been unknown to our law.

"While nonsupport of a wife or child was not a crime at common law, it has for nearly two and a half centuries been a crime by statute in Connecticut." *State* v. *Boyd,* 4 Conn. Cir. Ct. 544, 546. Our statute (§ 53-304), as we interpret it, did not create new private rights. "The purpose of this statute is not only to prevent wives and children from becoming charges upon the public purse"; *State* v. *Boyd,* supra, 547; "[t]he higher and more important object of the legislature of this State was to provide directly for unsupported wives and children, and to punish this offense against them, and by fear of punishment to prevent the committing of such offenses." *State* v. *Moran,* 99 Conn. 115, 119; see 23 Am. Jur. 2d 924 n.1, Desertion and Nonsupport, § 3. Having in mind the long history of our nonsupport statute and the purpose behind this legislation, we would be reluctant to say that the legislature intended to entrust the vindication of a public interest to private litigants. In other words, we construe the statute narrowly and restrictively. Moreover, we have a measure of distaste for the introduction of the element of private vengeance into criminal law administration. And finally, to permit a private party to initiate proceedings of this kind in the name of the state, thereby bypassing both the prosecuting attorney and the family relations division, would place a strain upon the orderly functioning of the family relations division.[2]

---

[2] According to statistics released by Patrick J. Ward, chief family relations officer of the Circuit Court, during the fiscal period from July 1, 1968, to June 30, 1969, the number of interviews conducted relating to support was 13,195, and, during the same period, the family relations division held 11,720 hearings for support. Support money collected during the period in question amounted to

We hold, therefore, that the difference in parties in a case such as this significantly marks the one as appropriate for judicial intervention and the other as inappropriate.

There is no error.

In this opinion CASALE, J., concurred.

DICENZO, J. (concurring in the result). The Circuit Court is a statutory court and has jurisdiction only in those matters especially set forth in the statutes. There is no authority in the statutes permitting the petitioner to initiate these proceedings.

$6,891,995.75. Support money disbursed to the state welfare department amounted to $2,379,321.16. The strain upon the family relations division if we were to permit private prosecution of non-support cases would lead to chaos and confusion.