LESTER RAY EPP, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 21124

July 12, 1991                    814 P.2d 1011

*Terri Steik Roeser,* State Public Defender, and *James P. Logan,* Deputy State Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Scott Doyle,* District Attorney, and *Nancy Rey Jackson,* Deputy District Attorney, Douglas County, for Respondent.

## OPINION

*Per Curiam:*

Appellant, Lester Ray Epp, was extradited from Oregon to Nevada to stand trial on felony charges of willfully neglecting or refusing to support or maintain his two minor children. NRS 201.020. Epp was convicted by a jury and sentenced to a term of six years in the Nevada State Prison. The sentencing judge also ordered Epp to pay restitution in the amount of $21,990.70 to his former wife. Epp raises a number of issues on appeal that he contends entitle him to relief from the judgment entered below. We disagree and affirm the judgment in its entirety.

### Facts

Epp and his former wife, Shelly, were married in 1970 and two children were born to the couple. The marriage survived until 1979 when it was terminated by a California divorce. The divorce decree ordered Epp to pay child support in the amount of $100.00 per month per child. Later, the decree was modified by the California court, increasing monthly support for the couple's son to $144.00; the daughter's support remained at the initial figure. With the exception of a single payment of $244.00 made in September of 1983, Epp made no support payments after the modified support obligation was entered in 1983.

Shelly remarried in 1983 and moved to Nevada, where she has since resided with her children. Epp lived a nomadic existence, pursuing various jobs in California, Oregon and Texas. Necessity eventually prompted Shelly to contact Nevada authorities in an effort to secure financial assistance from her former husband.[1] However, the Child Support Division of the Douglas County District Attorney's Office was unsuccessful in repeated attempts to locate Epp until he was finally found in Oregon in 1989.

After Epp was extradited from Oregon pursuant to a Governor's warrant, Shelly testified at Epp's trial that her former husband paid no child support between 1984 and 1989. A child support officer testified concerning the extent of the efforts undertaken to locate Epp during this extended period of time. The officer also testified why the State considered it necessary to proceed against Epp criminally instead of civilly, a decision cogently vindicated by Epp's election of prison over the opportunity to work and pay his long-delinquent support obligations.

Epp sought to defend his nonsupport by testifying that he did not make enough money to provide for his children. He admitted, however, that he possessed carpentry skills. He also admitted that from 1984 to 1989, he had worked for a commercial builder, and

---

[1] Apparently Shelly and her new husband had two children of their own and were experiencing difficulty in providing for the family.

at a hamburger restaurant and various service stations. Therefore, it was established that Epp was physically able to work during this time and that he in fact did so on different occasions.

## Discussion

Epp, correctly noting that each element of the crime had to be proved beyond a reasonable doubt, argues that the State failed to present evidence mandated by NRS 201.020 proving that his failure to support the children was without lawful excuse. He therefore contends that there is insufficient evidence to sustain the conviction.

NRS 201.020 makes it a crime for a parent—without lawful excuse—to willfully neglect or refuse to provide support and maintenance for his or her minor children. In order to sustain a conviction under the referenced statute, the State must prove: (1) parentage;[2] (2) that defendant owed a legal obligation to pay child support (e.g., through a court order);[3] (3) that defendant knew, or should have known, of the obligation; and (4) that defendant willfully failed to support his children.

[Headnote 2]

Because Epp denies neither his parenthood nor a knowledge of his legal obligation to support his children, the dispositive issue before us is whether the State proved that Epp willfully failed to support his children.

NRS 201.070 provides that the State can establish willfulness by showing that a defendant neglects or refuses to provide support or maintenance for his or her children. The term willful also "implies lack of just cause, excuse or justification." Gallegos v. People, 420 P.2d 409, 411 (Colo. 1966). Thus the State could establish willfulness by showing that Epp: (1) had the ability to generate income; (2) earned wages during the time period in question; and (3) failed to make the child support payments. Timmons, 706 P.2d at 1020.

The element of willfulness was clearly established in this case. Epp's ability to generate income was shown when he admitted that he possesses carpentry skills. He also admitted that he had earned wages by working at odd jobs during the time in question.[4]

---

[2]See NRS 201.025 (District Attorney shall take the steps necessary to establish the parentage of the defendant); NRS 201.070 (No greater proof is necessary to establish proof of parentage in criminal action than is necessary in civil action).

[3]See State v. Timmons, 706 P.2d 1018, 1020 (Or.Ct.App. 1985).

[4]There was evidence that Epp was injured for a relatively short period, but he nevertheless received worker's compensation benefits during this time.

It was also uncontested that Epp made no payments between 1984 and 1989. Finally, a strong indication of willfulness developed during cross-examination when Epp was asked why he hadn't paid any support. Epp stated in response that if his former wife found out his whereabouts by tracing a money order she would have him arrested and jailed.

Obviously, "the law does not contemplate punishing a person for failing to do a thing which he cannot do." Meek v. Commonwealth, 217 S.W.2d 961 (Ky. 1949). Once the State established the element of willfulness, Epp was free to demonstrate by way of a defense, that his nonsupport was lawfully excused or justified.[5] Epp attempted to establish his inability to pay by testifying that he had lived "hand to mouth" during the relevant time period.

The jury did not believe Epp and found him guilty. The jury was correctly instructed on the law[6] and there is sufficient evidence to support the jury's verdict. Where, as here, "there is substantial evidence to support a verdict in a criminal case . . . the reviewing court will not disturb the verdict nor set aside the judgment." Sanders v. State, 90 Nev. 433, 434, 529 P.2d 206, 207 (1974).

---

[5]*See* People v. Sorensen, 437 P.2d 495 (Cal. 1968) (statutory presumption that omission to support children is prima facie evidence of willfulness and without legal excuse places on defendant the burden of establishing lack of willfulness or that the omission was excusable); People v. Green, 495 P.2d 549, 551 (Colo. 1972) (without just cause language in criminal nonsupport statute was surplusage to the term "willfully") (quoting Gallegos v. People, 420 P.2d 409, 411 (Colo. 1966)); Rogers v. Commonwealth, 321 S.W.2d 779 (Ky. 1959) (defendant must establish physical or financial inability to pay child support); Meek v. Commonwealth, 217 S.W.2d 961 (Ky. 1949) (same); State v. Timmons, 706 P.2d 1018 (Or.Ct.App. 1985); State v. Campbell, 129 S.E.2d 902 (S.C. 1963); State v. Collins, 110 S.E.2d 270 (S.C. 1959) (husband must show just cause or excuse for failure to support wife and child); *see also* United States Dep't of Health and Human Services, *A Guide for Judges in Child Support Enforcement,* 99 (1982) (inability to pay support is only a *defense* against incarceration); Krause, *Child Support in America: The Legal Perspective* 58 (1981) (defendant may *defend* himself *by proving inability to pay through no fault of his own*).

This approach is also consistent with our earlier holding in Steeves v. District Court, 59 Nev. 405, 94 P.2d 1093 (1939). In *Steeves,* we held that in contempt of court cases it was defendant's burden to establish that he could not comply with the court order. *Id.* at 411, 94 P.2d at 1095. *See also* Application of Martin, 279 P.2d 873 (Idaho 1955) (burden rests upon defaulting father to show inability to comply).

[6]Jury instruction 4 reads, in part, that "[t]o find the defendant guilty of the felony charged the State must prove that the defendant willfully refused to pay child support for more than one year." "Willful" was defined as "an act or omission which is done intentionally, deliberately or designedly, as distinguished from an act or omission done accidentally, inadvertently, or

Epp also contends that his conviction is infirm because he was never in Nevada during the time he was charged with the crime of nonsupport. He cites three habeas corpus cases in support of the proposition that a person cannot commit the crime of nonsupport unless the accused is present within the state. In Re Kuhns, 36 Nev. 487, 137 P. 83 (1913); Ex Parte La Vere, 39 Nev. 214, 156 P. 446 (1916); Ex Parte Twyeffort, 42 Nev. 259, 174 P. 431 (1918). Epp is mistaken. NRS 194.020 reads:

> The following persons, except as provided in NRS 194.010, [people incapable of committing crimes] are liable to punishment: . . . A person who commits an act without the state which affects persons or property within the state, or the public health, morals or decency of the state, which, if committed within the state, would be a crime.

Moreover, although Epp committed no act, "[i]f there is a duty to act, failure to perform that duty is for the purpose of jurisdiction, tantamount to an act." Restatement of Conflict of Laws § 70 comment a (1934), *cited in* W. LaFave & A. Scott, *Handbook on Criminal Law* 121-22 (1972). Under the statute, Epp was liable for the crime of nonsupport in Nevada because he had a duty to support his children while they resided in this state and inexcusably failed to do so. State v. Paiz, 777 S.W.2d 575 (Tex.Ct.App. 1989); State v. Shaw, 539 P.2d 250 (Idaho 1975). Obviously, the effects of Epp's criminal refusal to pay support were felt by his former wife and children residing in Nevada. To the extent that the cases cited by Epp can be read to hold to the contrary, those cases are disapproved.

Epp also asserts that the six-year sentence was disproportionate to the crime and thus violative of the eighth amendment. Solem v. Helm, 463 U.S. 277 (1983). Epp contends that the sentence is excessive when compared to the sentences imposed for more serious crimes or to similar crimes in other jurisdictions.

Usually, a sentence of imprisonment imposed within the limits specified under the applicable statute—no matter how severe—is not cruel and unusual punishment. Schmidt v. State, 94 Nev. 665, 584 P.2d 695 (1978). NRS 201.020 permits the imposition of a

---

innocently." The jury was instructed about lawful excuses for nonpayment in instruction 9. That instruction reads:

> A parent is excused for his omission to provide support for his minor children where through no fault on his part he is unable to provide for such children after providing for his own reasonable living expenses. . . . However, it is not a lawful excuse if the defendant is unable to provide support due to personal extravagance, indifference, lack of reasonable diligence in obtaining employment.

sentence of up to six years if refusal to support has persisted one year or more. Epp did not make support payments for over five years and thus the sentence was within the parameters of the statute and not cruel and unusual punishment.

We also conclude that Epp's sentence is not disproportionate to the crime he committed. One of the most fundamental obligations of a father is the duty to provide support for his children. State v. Boyd, 236 A.2d 476 (Conn.Cir.Ct. 1967). We agree with the *Boyd* court that the following quote is apropos:

> A sense of duty pursues us ever. It is omnipresent, like the Deity. If we take to ourselves the wings of the morning, and dwell in the uttermost parts of the sea, duty performed, or duty violated, is still with us, for our happiness or our misery. If we say the darkness shall cover us, in the darkness as in the light our obligations are yet with us.

*Id.* at 478-79 (quoting "The Murder of Captain Joseph White," 6 Works of Daniel Webster 105 (18th ed. 1881)). Epp avoided his duty to support his children for over five years; his six-year sentence was not excessive. Moreover, in a real sense, Epp is his own jailer as he spurned the opportunity to remain free and commence a process of redemption by responsibly working to pay his long disregarded obligation of support to his children.

We have considered Epp's remaining assignments of error and conclude that they are meritless. The judgment entered pursuant to the jury's verdict is affirmed.