STATE of Utah, Plaintiff and Appellee,

v.

Elroy T. BARLOW, Defendant and Appellant.

No. 920381–CA.

Court of Appeals of Utah.

April 8, 1993.

Richard P. Mauro, Salt Lake City, for defendant and appellant.

Jan Graham and Kris C. Leonard, Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GARFF, Judge:

Appellant, Elroy Barlow appeals a jury verdict of criminal nonsupport. We affirm.

## TRIAL

On March 2, 1991, a jury convicted Barlow of criminal nonsupport in violation of Utah Code Ann. § 76-7-201 (1990).

In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict. *State v. Seale*, 853 P.2d 862, 865 (Utah 1993). We recite the facts accordingly.

Barlow was charged with the crime of criminal nonsupport for the period between January 1991 up to and including August 1991. A person is guilty of criminal nonsupport if that person "knowingly and without just cause fails to provide for the support of the spouse or children when either is in needy circumstances." Utah Code Ann. § 76-7-201(1) (1990).

Barlow and his former wife, Kathleen Barlow, have two children. Pursuant to the terms of the divorce decree, Barlow has a child support obligation of $150.00 per child per month, for a total obligation of $300.00 per month. Barlow made no payment of child support for the months of January, March, June, July, and August 1991. He paid $218.00 in February 1991, $55.00 in April 1991, and $164.00 in May 1991. Both children were in needy circumstances between January and August 1991.

During the period for which Barlow was charged, he worked for M & R Enterprises, an auto body business owned by his current wife, for which he is the primary laborer. Kathleen Barlow testified that she was not aware of any reason why Barlow could not provide the ordered child support for their children. She testified that she had called and spoken to him on the phone at his work during the charged time. Based on her personal knowledge, obtained during the seven years she was married to Barlow, she testified that Barlow is skilled in auto body, paint work, and car brokering and sales. She testified that Barlow's current business is licensed under his current wife's name, but that it is the same type of business and in the same location as the business he ran during the time he was married to her.

Officer Kelly Page, of the Murray City Police Department, testified that he observed Barlow at the auto body shop on September 26, which was less than a month after the period charged. Page found Barlow working on a pickup truck. Page said a compressor was running, and that the shop appeared to be set up and operable to do business.

Crystal Ann Larsen, an investigative technician for the Office of Recovery Services, testified that she telephoned M & R Enterprises on September 13, 1991, and that Barlow answered the phone. Again, this was shortly after the charged period. Barlow admitted to her that his wife owned the business and that he helped run the business.

Barlow, testifying in his own defense, admitted that he knew the amount he was required to pay for child support pursuant to the divorce decree. He admitted that he had not made the full payments required by the decree throughout the period in question. He testified that he was trying to work during the charged period, that his wife owned the body shop, and that his role was to do the auto body work. He testified that the reason he had not paid child support was that various illnesses had prevented him from working and earning money. He testified that he was sick and could not

work during January, he felt better in February, and worked a little in April, "trying to finish up a couple of things that we had in our shop." He testified that he was not ill in May and June, and that he worked "maybe some" in July. He admitted that during the charged period his wife worked at the Salt Lake County Sheriff's Office, and that prior to owning M & R, she had no experience with auto body work.

After considering this evidence, the jury rendered a guilty verdict. Barlow appeals.

## CRIMINAL NONSUPPORT

Barlow claims the jury verdict should be set aside because the State did not establish a prima facie case of the "just cause" element of the offense.

We review a jury verdict by viewing "the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict." *State v. Seale*, 853 P.2d 862, 865 (1993); *accord State v. Hamilton*, 827 P.2d 232, 233 (Utah 1992). We reverse a jury verdict only if " 'the evidence ... is [so] sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.' " *State v. Span*, 819 P.2d 329, 332 (Utah 1991) (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983)).

This standard remains even where much of the evidence is circumstantial. *Span*, 819 P.2d at 332; *State v. Nickles*, 728 P.2d 123, 126–27 (Utah 1986). It is well-settled that "circumstantial evidence alone may be sufficient to establish the guilt of the accused." *Nickles*, 728 P.2d at 126. Circumstantial evidence is sufficient to convict "if it is of 'such quality and quantity as to justify a jury in determining guilt beyond a reasonable doubt.' " *Span*, 819 P.2d at 332 (quoting *Nickles*, 728 P.2d at 127); *see also Nelke v. State*, 19 Ark.App. 292, 720 S.W.2d 719, 720 (1986) (state may use circumstantial evidence to prove lack of just cause in criminal nonsupport case).

■ In any event, it is the exclusive prerogative of the jury to judge the credibility of the witnesses and the weight of the evidence. *State v. Martinez*, 709 P.2d 355, 356 (Utah 1985).

## JUST CAUSE

■ A person is guilty of criminal nonsupport if that person "knowingly and without just cause fails to provide for the support of the spouse or children when either is in needy circumstances." Utah Code Ann. § 76–7–201(1) (1990).

While Utah courts have not defined the term "just cause" as used in this statute, other courts interpreting similar statutes have. Kansas, Arkansas and California courts have defined it as an inability to provide support. *State v. Kirkland*, 17 Kan.App.2d 425, 837 P.2d 846, 851 (1992); *accord Nelke v. State*, 19 Ark.App. 292, 720 S.W.2d 719, 720 (1986); *People v. Arnold*, 66 Cal.2d 438, 58 Cal.Rptr. 115, 123, 426 P.2d 515, 523 (1967). In *Kirkland*, the terms "without just cause" and "without lawful excuse" were held to have the same meaning. *Kirkland*, 837 P.2d at 851.

Similarly, the term used in the Nevada criminal nonsupport statute is "without lawful excuse." A Nevada court has held that the term also " 'implies lack of just cause, excuse or justification.' " *Epp v. State*, 107 Nev. 510, 814 P.2d 1011, 1013 (1991) (per curiam) (quoting *Gallegos v. People*, 161 Colo. 158, 420 P.2d 409, 411 (1966)). The State "can establish willfulness by showing that a defendant neglects or refuses to provide support or maintenance for his or her children." *Id.* In *Epp*, the Nevada Supreme Court held that the State could establish willfulness by showing that a defendant "(1) had the ability to generate income; (2) earned wages during the time period in question; and (3) failed to make the child support payments." *Id.*

*Epp* is similar to the present case in that the court relied primarily on circumstantial evidence. In *Epp*, the defendant had admitted that he possessed carpentry skills, that he had earned some wages by working at odd jobs during the time in question, and that he had made no payments. *Id.*

Here, the parties stipulated to the evidence supporting all the elements of the charged crime, except the element of just cause. That is, Barlow stipulated to the fact that he had support obligations for his two children, that he knew about this obligation, and that his children were in needy circumstances during the charged period.

The jury relied on the following evidence supporting a finding of just cause. Barlow had well over seven years of experience in the field of auto body and paint work and in car brokering and sales. He was also experienced in owning and running an auto body business. He worked during the charged period for M & R Enterprises, an auto body business that he had previously owned and that he transferred to the name of his current wife. Barlow had always been the primary laborer for the business. Barlow's former wife was not aware of any reason why Barlow could not provide the ordered child support for their children. His former wife had telephoned Barlow at his place of work several times during the charged period. Each time, Barlow either came to the phone or answered the phone himself.

Shortly after the charged period, a police officer observed Barlow at the auto body shop, working on a pickup truck. A compressor was running and the shop appeared to be set up and operable to do business.

About the same time, an ORS investigator telephoned Barlow at work. He answered the phone and admitted to her that his wife owned the business and that he helped run the business.

Finally, Barlow testified that he tried to work during the charged period, that his wife owned the body shop, that his role was to do the auto body work. The jury apparently relied upon Barlow's statements that he felt better in February, and worked a little in April "trying to finish up a couple of things that we had in our shop," and

that he worked "maybe some" in July. He admitted that, during the charged period, his wife worked at the Salt Lake County Sheriff's Office, and that, prior to owning M & R, she had no experience with auto body work.

Even though the evidence supporting the element of just cause was circumstantial, we conclude that the jury acted within its purview in concluding Barlow was without just cause in neglecting to pay the ordered support. *See Nickles,* 728 P.2d at 126; *see also Nelke v. State,* 19 Ark.App. 292, 720 S.W.2d 719, 720 (1986) (state may use circumstantial evidence to prove defendant lacked just cause in failing to support children).

The jury also acted within its purview in choosing to reject Barlow's unsubstantiated claims that he could not work during some of the charged period because of his medical condition. *See State v. Martinez,* 709 P.2d 355, 356 (Utah 1985).[1]

We do not address Barlow's claims of prosecutorial misconduct because we find such claims unsupported.

While a different jury may have rendered a different verdict, the fact remains that this jury acted within its purview in rendering a guilty verdict against Barlow. We therefore affirm.

GREENWOOD, J., concurs.

ORME, Judge (dissenting):

As in all criminal cases, the State bore the burden of proving each element of the offense charged. As to the element that non-payment was "without just cause," the State proved nothing at all. The State did not show that defendant had income during the charging period in an amount equal to or exceeding the unpaid support nor did it show he had assets which, if liquidated, would have provided funds with which to

---

1. The dissent elevates the State's burden of proof to one higher than required by statute. The dissent implies that the State should have proved (1) whether Barlow had income during the charged period in an amount equal to or exceeding the unpaid support; (2) whether Barlow had assets which, if liquidated, would have provided the required support; (3) whether Barlow enjoyed a lifestyle that of necessity meant he had the means to pay the unpaid support; (4) whether "positions of that sort [auto body] were available in the community;" and (5) "what such positions would pay."

pay the support. It did not prove that defendant enjoyed a lifestyle that of necessity meant he had the means to pay the unpaid support. On the contrary, he was evicted from his residence for non-payment of rent. The State proved he had skills in various aspects of the automobile business; it did not prove that positions of that sort were available in the community, much less what such positions would pay. The State proved that he was a de facto partner in an auto body shop but it did not show he made any money for his effort. On the contrary, the business folded.

The jury can draw reasonable inferences from the evidence adduced at trial. But from the evidence produced by the State, the inference cannot be drawn that defendant had the ability to pay but refused to do so without just cause. More would be required—either in terms of defendant's existing financial circumstances or the ready marketability of the skills he possessed—to permit the inference. On the record before us, the jury's conclusion was not an inference drawn logically from the evidence but a speculative guess, in the absence of *any* evidence, that defendant could have walked away from his failing business at any time and become gainfully employed at an income level sufficient to pay his child support.

Given the lack of evidence to support defendant's conviction, I would reverse.