# In re L.*

## Superior Court

Memorandum filed July 20, 1993

Levin, J. This is a proceeding alleging that the youth, L., is "uncared for" as defined by General Statutes § 46b-120 because she is "homeless." The putative father (movant) has moved for an order compelling the youth, now sixteen years of age,[1] to submit to a blood test to establish his paternity. The youth objects.

General Statutes § 46b-168 (a) provides in part: "In any proceeding in which a question of paternity is an issue, the court or a family support magistrate, on motion of any party, may order the mother, her child and the putative father . . . to submit to one or more blood grouping tests, to be made by a qualified physician or other qualified person, designated by the court, to determine whether or not the putative father . . . can be excluded as being the father of the child. The results

---

* Thus entitled in accordance with the spirit and intent of General Statutes § 46b-124 and Practice Book § 1058.

[1] " 'Child' means any person under sixteen years of age; 'youth' means any person sixteen to eighteen years of age . . . ." General Statutes § 46b-120. During the pendency of the movant's motion, L. reached her sixteenth birthday.

of such tests shall be admissible in evidence only in cases where such results establish definite exclusion of the putative father . . . as such father." Thus, § 46b-168 (a) authorizes a blood test for the purpose of *excluding* a person as a father of a child. The movant seeks to have the youth submit to a blood test for the opposite purpose, to establish his paternity. It is unnecessary, however, to determine whether the movant's claim falls within the ambit of this statute. "The power to enforce discovery is one of the original and inherent powers of a court of equity." (Internal quotation marks omitted.) *State* v. *Clemente,* 166 Conn. 501, 512, 353 A.2d 723 (1974). "[T]he Superior Court [i]s a general court of equity jurisdiction." *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 697, 553 A.2d 596 (1989); see General Statutes § 52-1.[2]

Whether the court is proceeding pursuant to § 46b-168 or pursuant to its general equity jurisdiction, the decision to order a blood test is discretionary with the court. *Barlow* v. *Guerrera,* 9 Conn. App. 431, 432, 519 A.2d 623 (1987) (applying General Statutes § 46b-168); see also *Katz* v. *Richman,* 114 Conn. 165, 171, 158 A. 219 (1932) (exercise of inherent power to direct discovery held discretionary). In determining how to exercise that discretion, the first consideration is embodied in the prefatory clause to § 46b-168, that is, whether this is a "proceeding in which a question of paternity is an issue . . . ." General Statutes § 46b-168. General Statutes § 46b-129 (d) provides in relevant part: "Upon finding and adjudging that any

[2] General Statutes § 52-1 provides in pertinent part: "The superior court may administer legal and equitable rights and apply legal and equitable remedies in favor of either party in one and the same civil action so that legal and equitable rights of the parties may be enforced and protected in one action." Since the inherent power of the Superior Court is the linchpin for its power to enforce discovery, the court need not determine whether the present case, or this particular aspect of it, is civil in nature.

child or youth is uncared-for, neglected or dependent, the court may commit him to the commissioner of children and youth services for a maximum period of eighteen months . . . or the court may vest such child's or youth's care and personal custody . . . with any person found to be suitable and worthy of such responsibility by the court. . . . Said commissioner may place any child or youth so committed to him in a suitable foster home or in the home of a person related by blood to such child or youth . . . ."

Section § 46b-129 (g) provides that where a child or youth has been committed to the commissioner of children and youth services, now the commissioner of children and families, as uncared for, neglected or dependent, the court "may, upon the application of a parent, including any person who acknowledges before [the] court paternity of a child or youth born out of wedlock . . . upon finding that cause for commitment no longer exists, revoke such commitment . . . ."

In his pro se "Motion for Blood Test" the movant states that "[t]here exist[s] a very strong possibility that I can arrange for the care of L. if I can definitely establish paternity" and "[t]here is a strong probability that members of my family will care for L. if it is established that I am the natural father." If the movant is the youth's father, he or members of his family would be potential caretakers and custodians of the youth pursuant to General Statutes § 46b-129 (d). See *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *Mongillo* v. *Jacobs,* 31 Conn. Sup. 158, 159, 325 A.2d 531 (1974). Even if the youth were committed to the care and custody of the commissioner of children and families, the movant's status as a parent would confer standing on him to petition to revoke the commitment pursuant to § 46b-129 (g). The question of paternity, therefore, is sufficiently in issue.

The issue then devolves into a balancing of the interests of L., the movant and the state. "Although 'blood testing is a limited form of intrusion into one's bodily integrity or privacy,' it will only be compelled if demonstrated state and private interests 'outweigh the [individual's] right not to have [their] bodily integrity violated by such a test.' " *Peterson* v. *Peterson,* 402 N.W.2d 847, 848–49 (Minn. App. 1987), quoting *State on Behalf of Kremin* v. *Graham,* 318 N.W.2d 853, 855–56 (Minn. 1982). Notably, this is not a case where the state seeks coercive interference with the rights of another. Compare *In re Juvenile Appeal (83-CD),* 189 Conn. 276, 455 A.2d 1313 (1983). Rather, here, a private party, the movant, seeks to employ the coercive hand of the court.

L. has a basic interest in her safety and "the important interest . . . in having a stable family environment." *In re Juvenile Appeal (83-CD),* supra, 287. She also has a fundamental constitutional right in her bodily integrity and privacy. "The right to privacy, though not explicitly provided for in the constitution, arises from penumbras of specific guarantees in the bill of rights, specifically the first, third, fourth, fifth and ninth amendments. *Griswold* v. *Connecticut,* 381 U.S. 479, 484–85, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965). The constitutional right to privacy has been extended to include the right of the individual to be free from unwarranted governmental intrusion into matters affecting a person's fundamental rights. *Eisenstadt* v. *Baird,* 405 U.S. 438, 453, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972). It encompasses the right of a [person] to be free from unwanted infringements of bodily integrity . . . . *Superintendent of Belchertown State School* v. *Saikewicz,* 373 Mass. 728, 739, 370 N.E.2d 417 (1977); *In re Quinlan,* 70 N.J. 10, 40, 355 A.2d 647, cert. denied sub nom. *Garger* v. *New Jersey,* 429 U.S. 922, 97 S. Ct. 319, 50 L. Ed. 2d

289 (1976)." *Foody* v. *Manchester Memorial Hospital,* 40 Conn. Sup. 127, 132, 482 A.2d 713 (1984). Here, L. has expressed these interests and rights in an effort to resist the removal of her blood for testing.

The state has a substantial and compelling interest in protecting children and youths. *In re Juvenile Appeal (83-CD),* supra, 285, 287; see *Lassiter* v. *Department of Social Services,* 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640, reh. denied, 453 U.S. 927, 102 S. Ct. 889, 69 L. Ed. 2d 1023 (1981); *Stanley* v. *Illinois,* supra, 649; *Prince* v. *Massachusetts,* 321 U.S. 158, 166, 64 S. Ct. 438, 88 L. Ed. 645 (1944). The state also has a compelling interest, arising out of statute and out of the common law; General Statutes §§ 46b-83, 46b-84, 46b-86, 46b-180 et seq., 46b-215 et seq., 46b-231; *United States* v. *Edwards,* 572 F. Sup. 1527 (D. Conn. 1983); *Zarifis* v. *Zarifis,* 28 Conn. Sup. 128, 129, 253 A.2d 673 (1969); *State* v. *Boyd,* 4 Conn. Cir. Ct. 544, 546, 236 A.2d 476 (1967); to ensure that a parent supports his child born out of wedlock. *State* v. *Wolfe,* 156 Conn. 199, 203, 239 A.2d 509 (1968). Incidental to that right is the state's right to establish the paternity of a child in appropriate cases. *Durso* v. *Misiorek,* 200 Conn. 656, 661–62, 512 A.2d 917 (1986); see General Statutes § 46b-160. Here, however, the state, which is a party to these proceedings in the entity of the commissioner of children and families, has not asserted any of these interests. The commissioner has taken no position on the motion nor is the commissioner seeking child support from the movant.[3]

This brings us to the interests of the movant. It is true that a parent has a fundamental right and interest in his family's integrity. *In re Juvenile Appeal*

[3] During the final hearing on the motion, it was stipulated that in September, 1990, the movant was convicted of manslaughter in the first degree and was sentenced to prison for twenty years. See *State* v. *Allen,* 28 Conn. App. 81, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992).

*(83-CD),* supra, 284, 287, citing *Stanley* v. *Illinois,* supra, 651. The movant, however, is not asserting the rights of a parent in his motion. Rather, he merely avers that he *may* be L.'s parent. That is his only linchpin on which to hang any claim of a right or an entitlement to compel L. to submit to a blood test. At best, such an uncertain assertion of a possible familial relation may entitle the movant to a judicial forum in which to resolve the uncertainty. See General Statutes § 52-29; *Stevens* v. *Leone,* 35 Conn. Sup. 237, 406 A.2d 402 (1979); *L—* v. *R—,* 518 S.W.2d 113 (Mo. App. 1974); *Slawek* v. *Stroh,* 62 Wis. 2d 295, 303–307, 215 N.W.2d 9 (1974); see also *In re Paternity of C.A.S.,* 161 Wis. 2d 1015, 1027–32, 468 N.W.2d 719 (1991); cf. General Statutes § 46b-172a. Such an uncertain claim does not give rise to a special constitutional status. Entitlement to a blood test, as previously observed, is statutory and is discretionary with the court. Balancing L.'s constitutional right to bodily integrity against the movant's tentative and attenuated status, the former must obviously prevail.

This is analytically dispositive. To the extent that the "best interests of the child" may be relevant, however, the movant has not made any showing that compelling L. to submit to a blood test would be in her best interests. It is constitutionally significant that the movant has not established any prior relationship with L. nor, indeed, with her mother. See *Lehr* v. *Robertson,* 463 U.S. 248, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983); *Quilloin* v. *Walcott,* 434 U.S. 246, 256, 98 S. Ct. 549, 54 L. Ed. 2d 511, reh. denied, 435 U.S. 918, 98 S. Ct. 1477, 55 L. Ed. 2d 511 (1978). Also, the movant has not questioned the ability or judgment of L.'s guardian in this matter. Moreover, at sixteen years of age, L. is entitled to have her own wishes given due consideration by the court. In determining "the best interests of the child

. . . [t]he court must consider the wishes of a mature child." *Gallo* v. *Gallo,* 184 Conn. 36, 42, 440 A.2d 782 (1981).[4]

The motion is denied.

---

[4] The movant is not necessarily without a remedy. It is true that Connecticut's paternity statutes do not provide for an action to be brought by a putative father. See General Statutes § 46b-160. A petition for a writ of habeas corpus, however, has long been used in this state to obtain custody of a minor child, including a child born out of wedlock. *Pi* v. *Delta,* 175 Conn. 527, 530, 400 A.2d 709 (1978). Elsewhere, it has been held that where the statutes do not provide for an action by a putative father to determine paternity, he may maintain a declaratory judgment action. *Slawek* v. *Stroh,* 62 Wis. 2d 295, 215 N.W.2d 9 (1974); cf. General Statutes § 52-29; *Stevens* v. *Leone,* 35 Conn. Sup. 237, 406 A.2d 402 (1979). In such an action both the child and her mother would be necessary parties. *L—* v. *R—,* 518 S.W.2d 113, 125–28 (Mo. App. 1974). While the movant still may not be entitled to have the child submit to a blood test in such an action, our cases provide for other ways in which paternity may be established. See, e.g., *Pierzanowski* v. *Jezewski,* 116 Conn. 704, 705, 164 A. 207 (1933) (constancy and continuity of accusation); *Mosher* v. *Bennett,* 108 Conn. 671, 674, 144 A. 297 (1929) (affection and intimacy), questioned on other grounds, *Lavertule* v. *Niman,* 196 Conn. 403, 407 n.6, 493 A.2d 213 (1985); *Hellman* v. *Karp,* 93 Conn. 317, 105 A. 678 (1919) (birth certificate stating name of father); *Higley* v. *Bostick,* 79 Conn. 97, 98–99, 63 A. 786 (1906) (resemblance of child to father); *Shailer* v. *Bullock,* 78 Conn. 65, 61 A. 65 (1905) (same); *Harty* v. *Malloy,* 67 Conn. 339, 35 A. 259 (1896). The use of serologic tests in paternity litigation still is of relatively recent vintage. 1 C. McCormick, Evidence (4th Ed. 1992) § 205, p. 883.