SHERIFF, Washoe County, Nevada, Appellant, v.
DAVID RICHARD VLASAK, Respondent.

No. 24893

January 25, 1995                                  888 P.2d 441

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Appellant.

*Michael R. Specchio,* Public Defender, and *John Reese Petty,* Deputy Public Defender, Washoe County, for Respondent.

## OPINION

By the Court, STEFFEN, C. J.:

The sole issue presented by this appeal is whether NRS 201.020, which criminalizes a parent's "persistent" failure to provide "support and maintenance" for his or her children, is unconstitutionally vague. For the reasons explained hereafter, we conclude that the challenged statute is not unconstitutional and we therefore reverse the district court's order.

### FACTS

The respondent, David Vlasak, married nonparty Rita Gray in 1982, fathered two children, and was divorced from Gray in 1986. The divorce decree ordered Vlasak to pay monthly child support in the amount of $150 per child. On July 2, 1992, the State filed an information in the district court charging Vlasak with felonious failure to pay child support in violation of NRS 201.020, which provides in relevant part:

> 1. Any . . . parent who without lawful excuse deserts or willfully neglects or refuses to provide for the support and maintenance of his legitimate or illegitimate minor child or children . . . shall be punished:
> (a) If the conduct for which the defendant was convicted persisted for less than 6 months, for a misdemeanor or, if such conduct persisted for more than 6 months, for a gross misdemeanor or, if for more than 1 year, by imprisonment in the state prison for not less than 1 year nor more than 6 years, or by a fine of not more than $5,000, or by both fine and imprisonment.

Gray testified at the preliminary hearing that Vlasak never paid child support until sometime in 1990, and then only after the district attorney's office became involved in the case. As of June, 1992, Vlasak had yet to make a voluntary payment directly to Gray. Gray further testified that Vlasak told her that he would rather go to jail than pay the required support. Finally, Gray testified that Vlasak did provide entertainment, clothing and gifts to the children when they visited him.

Deborah Backland, a family support specialist in the district attorney's office, testified that as of June, 1992, her office had been able to collect a total of $955 from Vlasak. The record does

not indicate when and in what increments the $955 was paid to the district attorney's office, although there is a vague reference to $25 and $50 partial payments. Further, the district attorney's office has obtained a number of contempt orders against Vlasak, each of which resulted in a suspended sentence. On March 19, 1991, Gray obtained a judgment against Vlasak in the amount of $12,900. As of June, 1992, the amount Vlasak owed to Gray had increased to $17,045. We are unaware of the present status of Vlasak's arrearages.

At a hearing held on August 3, 1993, the district court dismissed the felony information against Vlasak on grounds that NRS 201.020 was unconstitutionally vague. The order dismissing the information stated:

> Cause appearing, this Court finds that NRS 201.020 is unconstitutional for vagueness. The statute does not delineate a period of time for which persistent, continuous nonsupport should occur in order to establish grounds for a criminal offense. Neither "persistent" nor "support" are defined by this statute, leaving the person of ordinary intelligence without notice as to the conduct expected and the law enforcement official without the guidelines necessary to prevent discriminatory enforcement.

This appeal followed.

## DISCUSSION

This court has addressed the "vagueness" doctrine on a number of occasions. *See, e.g.*, Cunningham v. State, 109 Nev. 569, 570, 855 P.2d 125, 125 (1993) ("A statute which forbids the doing of an act in terms so vague that people of common intelligence must necessarily guess as to its meaning violates the first essential of due process, the notion of fair notice or warning."); State v. Richard, 108 Nev. 626, 629, 836 P.2d 622, 624 (1992) ("A vague law is one which fails to provide persons of ordinary intelligence with fair notice of what conduct is prohibited and also fails to provide law enforcement officials with adequate guidelines to prevent discriminatory enforcement."). We have also ruled, however, that:

> The due process clause of the United States Constitution "does not require impossible standards of specificity in penal statutes. The test of granting sufficient warning as to proscribed conduct will be met if there are well settled and ordinarily understood meanings for the words employed when viewed in the context of the entire statutory provision." It is settled that statutes are clothed with the presump-

tion of validity and the burden is on those attacking them to
show their unconstitutionality.

Wilmeth v. State, 96 Nev. 403, 405, 610 P.2d 735, 737 (1980)
(quoting Woofter v. O'Donnell, 91 Nev. 756, 762, 542 P.2d
1396, 1400 (1975)) (citations omitted).

We have reviewed the issue of the constitutionality of NRS
201.020 under illumination of the foregoing standards. The dis-
trict court found the word "support" to be so vague that persons
of ordinary intelligence would be without notice of the conduct
proscribed. According to the court's expressions prior to its order
of dismissal, the court apparently found sufficient ambiguity in
the statute to foreclose the conclusion that neither Vlasak's occa-
sional provision of clothing, food, and entertainment to the chil-
dren during visitation periods, nor the coerced payments
collected by the district attorney (totalling $955 over a number of
years), satisfied Vlasak's duty of support under the statute. We do
not view the word "support" to be so vague and therefore
disagree with the district court.

We have previously considered the requirements of NRS
201.020 and concluded that the phrase "support and mainte-
nance" means any court-ordered legal obligation to pay child
support. Epp v. State, 107 Nev. 510, 513, 814 P.2d 1011, 1013
(1991). Indeed, the district court in the instant case initially
found that "support" denotes the amount of court-ordered child
support when it announced that it would rely on the following
standard of law:

> [T]he instruction is going to be a continuous period that
> exceeds one year. Do you not have such a period in mind? I
> mean, do you—was there a hiatus of 12 consecutive months
> that *he failed to pay child support*?[1]

We are persuaded that parents of ordinary intelligence will
understand that their willful refusal to pay court-ordered child
support violates the clear terms of the criminal statute under
discussion. Additionally, parents of ordinary intelligence must
realize from the language of the statute that trifling and occasional
expenditures for entertainment and expenses incident to visitation

---

[1]*See also* NRS Chapter 130, entitled Reciprocal Enforcement of Support
(Uniform Act), which defines "duty of support" as follows:

> "Duty of support" means a duty of support whether imposed or
> imposable by law or by order, decree or judgment of any court,
> whether interlocutory or final or whether incidental to an action for
> divorce, separation, separate maintenance or otherwise and includes
> the duty to pay arrearages of support past due and unpaid.

NRS 130.0411.

do not entitle them to disregard their obligations to make lawfully imposed support payments. Such parents are on notice that the willful and legally unexcused refusal to provide the required support is prohibited and will not be countenanced under Nevada law.

The district court also found the phrase "persisted for more than one year" unconstitutionally vague because it may be arbitrarily enforced by officials who do not understand its meaning. According to the district court, the phrase may be interpreted to mean a period of time in which there were no intervening payments of support. Under this reading, a derelict parent does not commit a felony until 366 days after the last support payment was tendered. Conversely, the district court indicated that the statute may be read to mean that "one may make sporadic payments, but still be criminally responsible because one 'persisted' in being sporadic" for more than one year. Again, we disagree with the district court and conclude that the challenged phrase is not constitutionally infirm.

NRS 201.020 criminalizes the "persistent" refusal to pay court-ordered child support.[2] One persists in refusing to pay child support *whenever* there are two or more consecutive months during which the supporting parent willfully, and without legal excuse, refuses to remit the full amount required by court order. Any such willful refusal to remit the full amount required by court order constitutes a refusal to pay "support and maintenance" for that month. Any such willful refusal to pay the full amount required persisting for more than one year would violate the felony provisions of the statute. We emphasize, however, that NRS 201.020 is inapplicable whenever a parent's persistent *failure* to provide support does not rise to the statutory standard of "willfully" *refusing* to comply with court-ordered support. Thus, the standard for nonsupport is objectively defined, and a conviction under the statute depends upon a factual finding of a persistent, willful refusal, without legal excuse, to pay court-ordered support during the relevant time period.

We conclude that the word "support" and the phrase "persisted for more than a year" are subject to "well settled and

---

[2]NRS 201.020 makes criminal a parent's willful refusal, without legal excuse, to pay child support and maintenance. The statute does not specify the need for court-ordered support and maintenance as a predicate for the violation of the statute. Because the issue is not implicated in the instant case, we express no opinion as to whether the statute is sufficiently clear to pass constitutional muster when applied to the willful refusal to provide support and maintenance under lawful obligation stemming from sources other than a court order.

ordinarily understood meanings . . . when viewed in the context of the entire statutory provision." Wilmeth v. State, 96 Nev. 403, 405, 610 P.2d 735, 737 (1980). We therefore hold that NRS 201.020 is sufficiently clear to provide notice to potential violators of the conduct proscribed. The statute is not void for vagueness where, as here, the support and maintenance obligations are fixed by court order.[3]

## CONCLUSION

For the reasons discussed above, NRS 201.020 is constitutional, and the order of the district court dismissing the criminal information against Vlasak is reversed.

SHEARING and ROSE, JJ., concur.

SPRINGER, J., dissenting:

I would affirm the trial court's ruling that a crime defined solely in terms of certain *persistent* conduct is unconstitutionally vague. I agree with the trial judge that the word "persistent" as used in NRS 201.020 does not give notice to a reasonably intelligent person as to what conduct is being prohibited because it is impossible to know just when "persistent" begins and non-persistent ends.

Under NRS 201.020, a person's mere "willful refusal or neglect" to support his or her children will not alone subject that person to criminal punishment. One must *persist* in such refusal or neglect "for less than 6 months" in order to become punishable as a misdemeanant; for more than six months, but less than one year, to become punishable as a gross misdemeanant; and for more than one year to become punishable as a felon. The problem is that no one can tell with any acceptable degree of certainty at what point the duration of an accused's willful refusal or neglect reaches the level of being "persistent." One person's idea of persistency might be very much different from another's. One person might think that a person who missed two support installments was being persistent, while another might believe that missing three or four intermittent installments during a six-month period was not being persistent. In cases of intermittent payments that extended over a year's time, it would be even more difficult to draw the persistency/non-persistency line; and there are no legislative criteria established that give any guidance as to how to make this necessary distinction.

Persistency not only dictates the extent of punishment for committing the crime at issue, it is an essential element of the

[3]*See supra* note 2.

crime. If the accused has not *persisted,* he or she has not commit-
ted the crime. For example, one who willfully neglects or refuses
to pay support for his or her children for one month only would,
rather clearly, not incur any criminal liability. The State must
prove beyond a reasonable doubt that the defendant *persisted* in
refusing or neglecting to support his or her children, or no
conviction can result. *Persistency* is the key to this crime, the *sine
qua non*; and one cannot tell for sure what this word means in the
context of this penal statute.

It seems to me that the legislature could have set up more
definite and understandable criteria in defining the elements of the
crime and distinguishing among the various levels of punishment.
Indeed, if the legislature, as opposed to this court, were to define
persistent as, say, refusal or neglect to pay support "two or more
consecutive months," the statute would not be unconstitutionally
vague. I do not think, however, that any one can be properly
deprived of liberty under the statute as it is written now.

YOUNG, J., dissenting:

I agree with JUSTICE SPRINGER's dissent that the trial court's
decision should be affirmed. I write separately to express my
concern with what I regard as judicial legislating. Although a
court can limit the scope of a statute to avoid vagueness, some
justification for this limitation must exist. *See, e.g.,* Sheriff v.
Martin, 99 Nev. 336, 341, 662 P.2d 634, 637-38 (1983) (constru-
ing the term "cheat" in light of its statutory purpose); Hogan v.
State, 84 Nev. 372, 374, 441 P.2d 620, 621 (1968) (drawing upon
the common law definition of sodomy to avoid vagueness).

The majority relies upon the general presumption of constitu-
tionality which our statutes enjoy to justify its reading of NRS
201.020(1)(a). Although this presumption justifies narrowing the
scope of a statute in appropriate circumstances, it provides no
guidance for determining that scope.

The language of NRS 201.020 relevant to the present action
was added in 1969. *See* 1969 Nev. Stat., ch. 195, § 1 at 271. The
legislative history offers little help in determining exactly what
the legislature intended in its use of the term "persisted." The
senate judiciary committee simply noted that the amendment was
intended to increase the penalty for failure to pay support as the
amount of time in which support is not paid increases. Hearing
on AB 252 before the Senate Judiciary Committee, March 25,
1969, p.7. For all of the reasons stated both by JUSTICE SPRINGER
and the district court, the legislature's use of the term "per-
sisted" to carry out this purpose is vague. Indeed, one may
persist, as the term is commonly understood, in refusing to pay
support for long periods of time without actually persisting in

such conduct as the term could be reasonably defined under NRS 201.020(1)(a).[1]

With no guidance, the majority decides that to persist in failing to pay child support is to fail to pay the full amount of support for two consecutive months. Absent some guidance, however, this decision merely pastes a judicial facade upon a crumbling edifice best left to the legislative wrecking ball.

A brief excursion into the otherworldly realm of statistics justifies my concern. First, Nevada already has one of the highest incarceration rates in the nation. Judicial Assessment Commission, Simplifying the Maze: A Long Range Strategic Plan for Nevada's Court System, 46 (1994). The inmate population of jails in Washoe and Clark Counties far exceeds their combined construction capacity of approximately 2,000, further burdening taxpayers and necessitating early release programs, work furlough, and other alternatives to jail time. *Id.* at 47. Second, an estimated 18,673 children for whom an order of support has been established in Nevada did not receive any support at all. *See* Memorandum from Key Zunino, Chief, Nevada Child Support Enforcement Program, to Karen Kirchgasser, Senator Bryan's Office 2 (March 29, 1994) (on file with author).[2] Thus, the number of obligated parents who paid no support approaches 10,000, considering that an obligated parent supports an average of 1.87 children. *Id.* Who, among this vast number, would district attorneys prosecute under NRS 201.020(1)(a)? Further-

---

[1] Numerous troubling scenarios arise because the statute does not answer whether partial or sporadic payment constitutes a persistent failure to pay support. Any attempt by this court to answer this question will, I fear, create even more confusion. If, as the majority suggests, persistent failure to pay child support is the failure to pay the full amount of support for two consecutive months, then would one who makes full payment only every other month be shielded from the operation of NRS 201.020(1)(a)? Further, would one making monthly payments just pennies shy of the full amount be subject to prosecution? Similarly, because the majority states that only persistent failure to pay support for more than one year triggers the felony provision of the statute, could one flout this provision (as opposed to the misdemeanor and gross misdemeanor provisions) by making only one monthly payment every year, no matter how many years one persists in doing so?

[2] It is possible to quibble over this estimate because precise statistics for children residing in Nevada are not readily available. The estimated number includes children who are now living out of state but look to Nevada as the enforcing authority. The number also includes children residing in Nevada who depend upon another state for enforcement. However, the estimate does not include children whose parents use the services of a private attorney, nor does it include children receiving only partial support, such as Rita Gray's children. Hence, the number of children whose parents are subject to prosecution under NRS 201.020(1)(a) could be much higher than the estimated number discussed above.

more, because these obligated parents are often unemployed or underemployed, *see id.* at 1, who will defend them? I am concerned that the group ultimately punished by NRS 201.020(1)(a) will be taxpayers, while the group receiving the greatest benefit may be the legal profession.

I join in condemning all parents who fail to pay full child support. However, before we activate the legal machinery to lock them all up, we should ask the legislature to state with greater precision what it intended when it enacted NRS 201.020(1)(a). Until then, the purpose of NRS 201.020(1)(a) is too vague to justify either widespread enforcement or judicial tinkering.